No. 93,180

STATE OF KANSAS, *Appellee,* v. STURGEON STEWART, *Appellant.*

(133 P.3d 11)

Opinion filed April 28, 2006.

*Sam S. Kepfield,* of Hutchinson, argued the cause and was on the brief for appellant.

*Keith E. Schroeder,* district attorney, argued the cause, and *Karen S. Smart,* assistant district attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Defendant, an inmate of the Hutchinson Correctional Facility, was found guilty by the district court of one count of riot, a class A person misdemeanor. See K.S.A. 21-4104. Defendant was sentenced to 1 year in the Reno County jail to run consecutive to the sentence he was serving. Defendant appeals his conviction, claiming that there was insufficient evidence to convict him of the crime charged. The case was transferred from the Court of Appeals on the court's motion. See K.S.A. 20-3018(c).

The sole issue on appeal is whether there was sufficient evidence to convict Stewart of riot.

The evidence introduced by the State consisted of a videotape of the incident and the testimony of officers who were involved. Defendant Stewart was tried with two other inmates, Shawn Mack and Darrell Walker. At the close of the evidence, the trial judge found Mack and Walker not guilty. The trial judge found Stewart guilty, stating:

"I believe most of the evidence I've received in the trial applies to Mr. Stewart, Sturgeon Stewart. The evidence—that my evaluation of the evidence as to Mr. Stewart and again I refer to State's Exhibit No. 1, the videotape; Mr. Stewart was not observed defending himself. I observed Mr. Stewart attacking inmate Mack. I believe Mr. Stewart used force and violence which produced a breach of the peace. The description of the circumstances immediately [preceding] the breach of the peace, I believe meets the necessary elements of five or more persons acting together without authority of law. We have evidence of these groupings or gatherings, and I certainly agree that standing by itself, does not establish much. But very shortly thereafter, we have a, we have lines of combatants form, as though organized, and I believe the State has proved a riot as to Mr. Stewart."

The State's evidence introduced testimony evidence that on February 5, 2004, several days before the disturbance, several corrections officers observed inmate behavior which caused them to submit reports to the Intelligence Investigation Unit of the correctional facility indicating possible impending trouble. The corrections officers reported seeing inmates grouping by race, Hispanic and African-American, during recreation period. The gatherings caught the attention of the officers because prior conversations of some inmates appeared to be more serious than usual. As a result of the reports, officers were informed to keep an eye out for problems between Hispanic and African-American inmates.

On February 8 during a recreation period, Hispanic and African-American inmates were observed grouping in the gym. Defendant was in a group of African-American inmates of "more than three, less than 10." In addition to the groupings in the gym, there was "some odd behavior in the phone room about inmates sharing a phone call." As a consequence, two additional officers were assigned to the west hall gate yard, where after leaving the gymnasium inmates are required to pass through a metal detector. Based on these actions, Corporal Swenson was ordered to take a "less-

than-lethal" shotgun and watch the inmates checking in from recreation.

Just prior to the fracas, after about half the inmates had passed through the metal detector, two groups of inmates formed between the metal detector and the west hall gate. The grouped Hispanic inmates stopped and turned to face a group of African-American inmates. Reports of the numbers of inmates involved varied; one estimated 12 Hispanic and 6 to 10 African-American inmates. The groups "squared off," talking at first. An officer heard one of the Hispanic inmates say, "[I]t was going down." An African-American inmate stated, "It will be taken care of." One officer testified he was "pretty sure" he heard defendant say, "[H]ere we go." Fighting commenced when one of the Hispanic inmates charged the line of African-American inmates. The evidence at trial indicates that the defendant was involved in the fighting from the beginning. Several officers reported seeing defendant exchanging punches with Shawn Mack. Although ordered to stop fighting, the two continued. Later defendant was observed fighting with another inmate.

When the fight commenced, Corporal Bell sent a signal 30, *i.e.*, a call for help. In response, the surveillance camera operator turned a camera toward the action. The videotape introduced by the State as Exhibit 1 is part of the record on appeal. After viewing the videotape, Master Sergeant Mike Nickels described defendant as the most aggressive of the inmates involved in the disturbance.

As the fighting continued, a signal 31, indicating the need for more help, was sent. At that time, Corporal Swenson was joined by 2 more officers armed with lethal shotguns. With the help of additional officers using pepper spray, the disturbance was quelled. Estimates of the duration of the fight varied from 30-35 minutes to 20 minutes and 16-17 minutes. The fighting captured on videotape is very brief.

As a result of the altercation, one inmate was stabbed in his left forearm. Two officers were injured. One officer had his thumb broken and was kicked in the groin. The other officer suffered a bruised knee. After inmates were cleared out of the area, a broken, 8-inch shank made of sharpened plastic and a pair of bloody latex gloves were found.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Stewart was convicted of the offense of riot, which is defined as "any use of force or violence which produces a breach of the public peace, or any threat to use such force or violence against any person or property if accompanied by power or apparent power of immediate execution, by five or more persons acting together and without authority of law." K.S.A. 21-4104(a). The premise of defendant's argument on appeal is that K.S.A. 21-4104(a) incorporates the common-law requirement that the five or more persons had an express or implied agreement to breach the peace. Stewart contends there was no evidence the inmates involved planned the disturbance.

The Kansas case cited by defendant to the appellate court, *State v. Dargatz*, 228 Kan. 322, 614 P.2d 430 (1980), however, does not support his assertion that an actual agreement is essential for conviction of the crime charged. In *Dargatz*, the court affirmed the defendant's conviction of incitement to riot (K.S.A. 21-4105). The court observed that incitement to riot is a specific intent crime involving a specific intent to provoke a riot or that disorder ensue. 228 Kan. at 331. The *Dargatz* court then distinguished the offenses of riot and incitement to riot, stating riot was a crime which existed at common law. Under the common law, a riot was defined as a "tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." 77 C.J.S., Riot § 1. Generally, the statutory definitions of "riot" are in harmony with and follow the common-law definition.

In *Dargatz*, 228 Kan. at 326, this court noted that the word "mob" is practically synonymous with "riot" and found that under 21-4104, to establish the charge of riot the following elements must

be proved: (1) That the defendant used force or violence which resulted in a breach of the public peace; (2) that the defendant acted in a group of five or more persons; and (3) that the defendant acted without authority of law. Incitement to riot and riot are separate and distinct offenses. One may incite to riot without participating in the riot or may participate in a riot without having incited it. *Commonwealth v. Apriceno, Appellant*, 131 Pa. Super. 158, 161, 198 A. 515 (1938); *Com. v. Safis et al., Appellants*, 122 Pa. Super. 333, 340, 186 A. 177 (1936).

The *Dargatz* court observed that the Kansas statutory crime of incitement to riot has essentially the same elements as the common-law crime. The *Dargatz* court concluded that to establish the charge of incitement to riot under K.S.A. 21-4105, the State must prove that the defendant, as a member of a group of five or more persons, by words or conduct urged others to engage in a riot under circumstances which produced a clear and present danger of injury to persons or property or a breach of the public peace. 228 Kan. at 326-27.

Under common law, the crime of riot did not require proof of an agreement to breach the peace. More important, this court has not interpreted K.S.A. 21-4105 to require proof of such an agreement. In *State v. Sexton*, 232 Kan. 539, 542-43, 657 P.2d 43 (1983), we said:

> "It has long been the rule in Kansas that all crimes are established by legislative act. There are no common law crimes in the state, and there can be no conviction except for such crimes as are defined by statute. *State v. Young*, 55 Kan. 349, 356, 40 Pac. 659 (1895).
>
> "It is also the rule in this state that a criminal statute will not be 'extended by courts to embrace acts or conduct not clearly included within its prohibitions.' *State v. Doyen*, 224 Kan. 482, 488, 580 P.2d 1351 (1978)."

Here, Stewart initially was charged with incitement to riot, later the charge was amended to riot. Therefore, the State had to prove that, acting without authority of law and in a group of five or more persons, defendant used force or violence that resulted in a breach of the public peace. See PIK Crim. 3d 63.04. Although some shared intent would be intrinsic in the element of acting in a group,

the statute does not require the State prove an agreement among the group members.

Stewart's conviction is affirmed.