(241 P.3d 1018)
No. 101,818

STATE OF KANSAS, *Appellee*, v. TERRY LEE DIAZ, *Appellant*.

Opinion filed October 29, 2010.

*Randall L. Hodgkinson*, and *Jonathon L. Noble*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Ramsey A. Olinger*, legal intern, *Stephen M. Howe*, district attorney, and *Steve Six*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and BUSER, JJ.

LEBEN, J.: A jury convicted Terry Diaz of aggravated failure to appear after he didn't attend the pretrial conference for his felony drug possession charge and didn't turn himself in for over 8 months. Diaz insists on appeal that the evidence was insufficient to convict him because his failure to appear wasn't willful—his attorney told him that he didn't need to attend. He also argues that a mistake instruction should have been given.

Although a mistake of fact is a defense to a crime when it negates the crime's required mental state, Diaz' claimed mistake does not negate the required mental state for aggravated failure to appear. To be convicted, Diaz need only intend to do the conduct that the statute prohibits, *i.e.*, not appear and not turn himself in. Here, Diaz intended to not attend; his attempt to justify that failure with reliance on his attorney's advice does not negate the mental state required to commit this crime. Therefore, a rational fact-finder could find him guilty beyond a reasonable doubt. Moreover, because his claim of mistake would not negate the intent, the district court's failure to give a mistake jury instruction was not in error. We therefore affirm Diaz' conviction.

## Factual Background

Terry Diaz was charged with felony drug possession. On October 6, 2006, Judge Davis set the case's pretrial conference for December 8, 2006; Diaz and his retained attorney, Dave Gilman, were both present. Diaz and Gilman had known each other for over 25 years.

According to Judge Davis, his practice was to always tell defendants charged with a felony that they needed to appear at all hearings. But in this case, Judge Davis did not check the box on his bench notes indicating that he had told Diaz to appear and the written transcript of the hearing does not contain an order to appear either. Diaz also does not remember being ordered to appear. Diaz did sign an appearance bond that notified him of the hearing date and that he needed to appear; the hearing date was in bold font. Diaz said that he didn't read the part about the court date when he signed the appearance bond; he merely skimmed the document because he was eager to get out of jail.

After he was bonded out, Diaz visited Gilman. According to Diaz, Gilman told him that he didn't need to appear at the conference on December 8 since Gilman was going to ask for a continuance. Diaz explained that Gilman was going to ask for a continuance because Diaz wanted to go to trial and that Gilman would notify him of the new court date.

Then Gilman's wife suddenly died in October, and Gilman became ill shortly thereafter. Gilman's son, Frank, took over his father's cases. Frank told the prosecutor and Judge Davis about his father's illness, and he believes that he told Judge Davis that he would be unable to attend Diaz' pretrial conference. But Frank did not request a continuance that would excuse Diaz' presence, and presumably Gilman didn't request a continuance either.

Diaz did not appear on December 8. The district court forfeited Diaz' bond and issued a warrant for his arrest. Diaz testified that Frank called his girlfriend on December 9 but that he didn't speak with Frank; Frank does not remember contacting Diaz. Still, Diaz admitted that he knew on December 10 that a warrant had been issued for his arrest, and Diaz did not turn himself in within 30 days of the bond forfeiture. He testified that during this time he was still in town working and that he eventually went to Texas and then to Mexico in April 2007. Gilman had died in March 2007.

In August 2007, Diaz ended up in the custody of the border authorities, was brought back to Kansas, and was charged with aggravated failure to appear. Diaz claims that he turned himself in so that he could resolve these issues; the information the sheriff's office received from the border authorities did not indicate whether Diaz turned himself in or whether he was apprehended. But Diaz waived extradition, meaning he didn't fight being brought back to Kansas.

A jury found him guilty of the offense, and the district court sentenced him to an additional 7 months in prison. He appeals and argues that the evidence was insufficient to sustain the conviction and that the district court erred in not giving the jury a mistake instruction (PIK Crim. 3d 54.03).

## DISCUSSION

I. *Sufficient Evidence Existed to Convict Diaz of Aggravated Failure to Appear.*

In considering Diaz' challenge to the evidence's sufficiency after a conviction, this court reviews all the evidence in the prosecution's favor and determines whether a rational fact-finder could have

found Diaz guilty beyond a reasonable doubt. *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

A defendant commits aggravated failure to appear when, after being charged with a felony and released on an appearance bond to appear before a court, he or she willfully forfeits the appearance bond and fails to surrender within 30 days of the forfeiture. K.S.A. 21-3814(a). Forfeiture of an appearance bond occurs when the defendant fails to appear "as directed by the court and guaranteed by the appearance bond." K.S.A. 22-2807(1), (2).

On appeal, Diaz contends that he did not have the required mental state for the offense—willfulness—because he was operating under a mistake of fact, the mistake being Gilman's advice that Diaz didn't need to attend the hearing because Gilman would request a continuance.

A mistake of fact is a defense if it negates the crime's required mental state. K.S.A. 21-3203(1). Although termed a "defense," the mistake-of-fact doctrine merely encapsulates the State's burden to prove every element of the offense: the State cannot convict the defendant if it fails to show that the defendant had the required mental state when committing the crime. See *United States v. Platte*, 401 F.3d 1176, 1184 (10th Cir. 2005).

Like most other states today, Kansas defines its crimes by statute. *State v. Stewart*, 281 Kan. 594, 598, 133 P.3d 11 (2006); see Merrill, *The Disposing Power of the Legislature*, 110 Colum. L. Rev. 452, 457-58 (March 2010). The Kansas criminal code contains a different definition of criminal intent than the one Diaz argues: that the defendant merely intended the conduct that constitutes the crime. K.S.A. 21-3201(a) ("Criminal intent may be established by proof that the *conduct* of the accused person was intentional." [Emphasis added.]). In other words, the State doesn't need to prove that the defendant intended the precise harm or the result that occurred. *In re C.P.W.*, 289 Kan. 448, 454, 213 P.3d 413 (2009). Crimes requiring only intent to commit the conduct are often called general-intent crimes, and the general rule is that mistake of fact is not a defense to general-intent crimes. See, *e.g.*, *State v. Gillon*, 25 Kan. App. 2d 809, 974 P.2d 1115, *rev. denied* Kan. 266 Kan. 1112 (1999) (defendant was not entitled to mistake-of-

fact instruction in prosecution for possession of sawed-off shotgun because State was required only to prove possession of outlawed weapon not knowledge of specific length of barrel as compared to legal minimum). A defendant's mistaken belief that the facts make his or her conduct innocent would not negate the mental state because the defendant still intended to do the conduct that constitutes the crime. In such a case, a mistaken belief that the conduct wasn't against the law would not negate the required mental state.

Some crimes, however, require more than intent to do the conduct; these crimes require an additional intent to achieve a particular consequence or harm. 289 Kan. at 454-55; see, *e.g.*, K.S.A. 21-3715(a) (burglary, defined as entering a building "with intent to commit a felony, theft or sexual battery therein"); K.S.A. 21-3503(a)(1) (indecent liberties with a child requires that the prohibited conduct be done with "intent to arouse or satisfy the sexual desires of either the child or the offender, or both"); K.S.A. 21-3419(a) (criminal threat is "any threat to . . . [c]ommit violence communicated with intent to terrorize another"); K.S.A. 21-3701(a) (felony theft is defined as the taking of another's property worth at least $1,000 "with intent to deprive the owner permanently of the possession, use or benefit" of the property); K.S.A. 21-3612(a)(4) (contributing to child's misconduct or deprivation is defined as "sheltering or concealing a runaway with intent to aid the runaway in avoiding detection or apprehension by law enforcement officers"). These crimes have been called specific-intent crimes, and mistake of fact is traditionally recognized as a defense to them because the defendant could not have intended to, for example, commit felony theft if he thought he had the owner's permission to take the property, even if that understanding was mistaken.

But the labels for general versus specific intent and their corresponding rules for whether mistake of fact can be a defense often tend to confuse courts and parties more than help them. See *United States v. Iron Eyes*, 367 F.3d 781, 784-85 (8th Cir. 2004); 1 LaFave, Substantive Criminal Law § 5.6 (2d ed. 2003). This is especially so when courts, in seeming disagreement with the general rule, declare that "[a] reasonable mistake of fact may be as-

serted as a defense to a general intent crime." *People v. Alvarez*, 2010 WL 457524, \*3 (Cal. App. 2010) (unpublished opinion). Nevertheless, this declaration is merely a revival of an old common-law rule that made mistake of fact a defense. It's used when statutory crimes don't have a mental state but require that certain circumstances exist to make the crime complete, and it excuses the defendant's reasonable mistakes about the circumstances. See 2 LaFave, Substantive Criminal Law § 17.2. The most common example is rape—defined generally as unlawful sexual intercourse with another person without consent. Black's Law Dictionary 1374 (9th ed. 2009). For example, in most states, if the defendant was reasonably mistaken that the victim had consented, the mistake of fact is a defense to the crime. 2 LaFave, Substantive Criminal Law § 17.2. Thus, to avoid confusion, the proper focus should be: (1) what culpability the defendant must have had to commit the crime; and (2) whether the mistake of fact negates that culpability.

Turning to the aggravated-failure-to-appear statute at issue in this case, if the statute required that Diaz willfully failed to appear with the intent to forfeit his appearance bond, his mistake of fact would prevent him from having the required mental state: Diaz would not have intended to forfeit his appearance bond because he believed that his absence from the hearing was excused and would not have led to the forfeiture. But the statute requires no such additional intent; it merely requires the State to show that the defendant intended to do the conduct that constitutes the crime, *i.e.*, not appear for his hearing and not turn himself in. See K.S.A. 21-3814(a); see also *State v. Ellis*, 2004 WL 1245626, \*3 (Kan. App. 2004) (unpublished opinion), *rev. denied* 278 Kan. 848 (2004) (aggravated failure to appear is a general-intent crime). Although whether a failure-to-appear offense is a general- or specific-intent crime will vary based on the wording of a specific state's statutes, several other states similarly have concluded that it is a general-intent crime. See Annot., 63 A.L.R.4th 1064 § 13[a] (citing cases).

Diaz' claimed mistake of fact would not negate this intent. Diaz knew the hearing was that day and read an appearance bond ordering him to attend on that day, and he intended to not appear at the hearing—he just didn't think that his conduct was wrongful

based on Gilman's advice. See *Barrera v. State*, 978 S.W.2d 665, 671 (Tex. App. 1998) ("Even if appellant's attorney had unequivocally informed him that he need not appear, incorrect legal advice is not sufficient to establish a defense of mistake of law or mistake of fact."). Had Diaz claimed that he negligently failed to attend because he had written down the wrong date for the hearing, he would not have had the intent to miss the hearing. But that is not the case here.

Similarly, Diaz likewise intended to not turn himself in after the forfeiture. He again asserts that Gilman's claims of getting a continuance excused his failure to turn himself in. But yet again, Diaz' assertions merely allege that he didn't know his conduct was wrongful. They do not negate the intent to not turn himself in.

Given this understanding of the role of intent in Diaz' case, the evidence is sufficient to support his conviction. The evidence shows that Diaz knew (or at least should have known) that he was in trouble for failing to appear and that he needed to turn himself in. First, Diaz testified that he knew on December 10—2 days after the hearing—that a warrant was out for his arrest. A reasonable person who believes that he was wrongfully penalized for not attending would have taken steps to investigate what happened and clear his name. The evidence does not show that Diaz took such steps in this case.

Second, before the hearing, Diaz was adamant about keeping constant contact with Gilman on the case's progress. Yet Diaz' testimony shows that he wasn't concerned about not having heard from Gilman about the continuance date, and it further shows Diaz made no effort to contact Gilman after the hearing. With a warrant out for his arrest and no contact with his counsel about the alleged continuance, Diaz has difficulty showing that he didn't know about the trouble he was in for failing to appear and turn himself in. Diaz allowed months to pass with the warrant out and no contact with Gilman and then left the state and the country, a month after his attorney and long-time acquaintance died. And he didn't return until months later.

Diaz explained that he went down to Mexico to collect money on rental houses so that he could make additional bond and attor-

ney money. But as the district court pointed out, a continuance means that a new trial date is set. Diaz' conduct is not conducive to one who expects to go to trial; it is consistent with someone who knew he was in trouble for not complying with a court's order and who took advantage of his attorney's failing health to skip town and avoid facing the consequences of his criminal actions.

Viewing the evidence in the State's favor, as we must, a reasonable jury could have found beyond a reasonable doubt that Diaz willfully failed to appear as ordered by the court and the appearance bond and that he willfully failed to turn himself in within 30 days.

II. *The District Court Did Not Err by Refusing to Instruct the Jury on the Defense of Mistake.*

Diaz argues that the district court should have told the jury that he had a defense to the charge if Diaz was mistaken, based on the advice of his attorney, about whether he had to attend the court hearing. But because aggravated failure to appear is a general-intent crime, Diaz' mistake defense does not work—he still willfully failed to appear and willfully failed to turn himself in.

Because Diaz is challenging the district court's failure to include an instruction he did not request, he has to show clear error, meaning that not only did the district court err but that there also is a real possibility that the jury would have rendered a different verdict had the instruction been given. See K.S.A. 22-3414(3); *State v. Martinez*, 288 Kan. 443, 451-52, 204 P.3d 601 (2009). We conclude that the district court did not make an error here at all because Diaz' defense of mistake does not negate this general-intent crime.

In sum, given that the offense is a general-intent crime, the evidence was sufficient to convict Diaz, and the district court made no error when it failed to give an instruction on the defense of mistake. We therefore affirm the judgment of the district court.