IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,643

STATE OF KANSAS.
*Appellee*,

v.

DANNY W. QUEEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under the facts here, where a district court judge mistakenly set a trial beyond the speedy trial time set in K.S.A. 2020 Supp. 22-3402, the judge did not cite the need to do so because of a crowded docket, and no party requested nor did the court order a continuance, the crowded docket exception of K.S.A. 2020 Supp. 22-3402(e)(4) does not apply to extend the speedy trial deadline.

2.

Under the facts here, a defendant did not waive speedy trial rights or cause a delay that tolled the running of the speedy trial deadline when defense counsel merely acknowledged availability on the date proposed by the court for trial.

3.

Under the facts here, the State failed to preserve for appellate review whether a delay kept the State from bringing a defendant to trial within the time required by K.S.A. 2020 Supp. 22-3402 and resulted from the application or fault of the defendant. The State failed to raise the issue in the district court and questions of fact remain unresolved.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 2, 2020. Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed March 19, 2021. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Kate Duncan Butler,* assistant district attorney, argued the cause, and *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  The Kansas speedy trial statute requires a court to "discharge [a criminal defendant] from further liability to be tried for the crime charged" if that person was held in jail solely on the charged crime and was not brought to trial within 150 days after such person's arraignment on the charge. K.S.A. 2020 Supp. 22-3402(a). Danny W. Queen seeks discharge from charges of murder and attempted murder because the State did not bring him to trial until 153 days after his arraignment. In seeking discharge from liability, Queen did not then, nor has he ever, asserted that the trial setting violated his constitutional right to a speedy trial. He relied only on his statutory speedy trial right.

The district court judge denied Queen's request, relying on provisions in the speedy trial statute that allow a judge to extend the 150-day period under certain conditions. Queen appealed, and a Court of Appeals panel reversed the district court, holding that no statutory exceptions applied to extend the speedy trial deadline. The panel also noted that the speedy trial statute unambiguously directs courts to discharge from liability any person not timely brought to trial. The Court of Appeals commented:  "The remedy is strong medicine, since it undoes any conviction obtained in a trial

impermissibly held after the statutory deadline and precludes any further prosecution of the defendant on those charges." *State v. Queen*, No. 120,643, 2020 WL 3579872, at *6 (Kan. App. 2020) (unpublished opinion).

The State timely petitioned for review, which this court granted. This court's jurisdiction is proper under K.S.A. 20-3018(b) (petition for review of Court of Appeals decision). On review, we affirm the Court of Appeals holding that no exceptions extended the statutory speedy trial period and, consistent with the Legislature's directive, Queen must be discharged from liability on the charges.

FACTUAL AND PROCEDURAL BACKGROUND

The basic facts of the crime are straightforward: After Queen was kicked out of a Eudora bar, he shot and killed a bouncer, Bo Hobson. He also tried to shoot two other people but failed when his gun jammed.

Queen ended up at the bar after an evening of drinking in celebration of his birthday. Queen became upset when he perceived the female bartender was ignoring him. He shouted profanities and slurs. Bar staff and other patrons, including Hobson, ultimately escorted him outside. Once outside, a scuffle broke out between Queen and others that was quickly broken up. Queen was separated from the group; Hobson remained nearby and asked Queen if he was OK and if he needed a ride. Queen sat by himself, undisturbed, for a few minutes before pulling out a gun and firing, shooting Hobson in the chest. Queen tried to shoot two other patrons, but the gun misfired. Several patrons jumped in and beat Queen into unconsciousness, restraining him until police arrived. Hobson died the next day.

3

*Speedy trial facts*

The State charged Queen with premeditated first-degree murder and two counts of attempted first-degree murder. Queen was unable to post bond and remained in custody throughout the proceedings. A Douglas County District Court judge arraigned Queen on October 31, 2017, and he pleaded not guilty to all charges. The Douglas County District Court judge then discussed scheduling the trial with the attorneys. The prosecutor told the court it would be difficult to schedule witnesses and jurors during the week of March 19th because that week coincided with spring break for both the University of Kansas and Lawrence public schools.

The judge then had the following discussion with the attorneys:

"THE COURT: Speedy trial would run April 30th?

"[THE STATE]: Yeah.

"THE COURT: Spring break again is when?

"[THE STATE]: March 19th, which is a Monday.

"THE COURT: Counsel, will you check your availability for April 2nd that week.

"[THE STATE]: That's fine with the State.

"[DEFENSE COUNSEL]: Monday, April 2nd? That works for defense, Your Honor.

"THE COURT: Okay."

4

After scheduling the trial, the court scheduled a pretrial motion hearing for February 23, with a January 31 deadline for filing motions. The court also scheduled a status conference for March 16. No party requested a continuance between the arraignment and the April 2 trial date.

The court and the prosecutor incorrectly stated that the speedy trial deadline was April 30. The correct deadline was March 30. On the morning of the April 2 trial date—153 days after arraignment—Queen filed a motion to dismiss with prejudice based on a speedy trial violation. Queen noted he had continually been in custody, which meant the State had 150 days after arraignment to bring him to trial or the speedy trial statute required the court to release him from custody.

The judge released the jurors and allowed the State to respond. The State cited K.S.A. 2020 Supp. 22-3402(e)(4), the so-called crowded docket exception, which allows for a one-time, 30-day continuance if "because of other cases pending for trial, the court does not have sufficient time to commence the trial." The State also argued that the defense acquiesced to the speedy trial violation by affirming that counsel was available for an April 2 trial setting.

The district court judge denied Queen's motion to dismiss. In so doing, the judge acknowledged the error in stating that the April 30 date was the speedy trial date. But the judge also faulted defense counsel for failing to correct the error, saying that attorneys have a duty of candor to correct false statements of law or fact. The judge also said that the crowded docket exception allowed the court to extend the speedy trial period. The judge acknowledged there had been no findings made about the crowded docket when the trial was scheduled, but the fact that the judge had scheduling conflicts was implicit because the trial would have been scheduled earlier had the calendar allowed for it. At the

5

same time, however, the judge said that had the court been aware of the correct speedy trial date, the judge could have rearranged the schedule to accommodate Queen's trial.

The judge rescheduled Queen's trial, and ultimately a jury found Queen guilty of intentional second-degree murder, one count of attempted second-degree murder, and one count of attempted voluntary manslaughter. The district court judge sentenced Queen to 226 months in prison with a postrelease supervision period of 36 months.

ANALYSIS

The right to a speedy trial predates nationhood, and our country's founders enshrined it in the Sixth Amendment to the United States Constitution. Likewise, our state founders adopted the right in § 10 of the Kansas Constitution Bill of Rights. See *In re Trull*, 133 Kan. 165, 167, 298 P. 775 (1931) (speedy trial right part of common law). This court has described the right as that of an accused to be free from living indefinitely under a cloud of suspicion:

> "'This constitutional provision, adopted from the old common law, is intended to prevent the oppression of the citizen by holding criminal prosecutions suspended over him for an indefinite time; and to prevent delays in the administration of justice, by imposing on the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations.'" *In re Trull*, 133 Kan. at 169.

Neither the United States nor the Kansas Constitutions impose specific time requirements for bringing a criminal defendant to trial. Instead, to determine whether a delay violates the speedy trial right granted by both Constitutions, courts consider four nonexclusive factors: (1) the delay's length, (2) the cause of the delay, (3) whether the defendant asserted the right, and (4) any prejudice to the defendant. *State v. Owens*, 310 Kan. 865, 869, 451 P.3d 467 (2019) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct.

6

2182, 33 L. Ed. 2d 101 [1972]). Queen has not argued the State violated his constitutional right to a speedy trial or that he could meet his burden to establish any of these factors.

Queen instead exclusively relies on Kansas' speedy trial statute. Unlike the constitutional provisions, it sets specific time requirements for bringing a defendant to trial within 150 days if a defendant remains in jail and 180 days if a defendant makes bond. The State has the burden of meeting the time requirement, and the defendant does not have to assert the right. *State v. Dreher*, 239 Kan. 259, 260, 717 P.2d 1053 (1986).

If the State fails to bring the defendant to trial by the deadline, the defendant is "entitled to be discharged from further liability to be tried for the crime charged." K.S.A. 2020 Supp. 22-3402(a). Stated more colloquially, the defendant receives a get out of jail free card. But the statute contains exceptions that allow for extensions of the time requirements for various reasons. These exceptions apply, for example, if the defendant causes the delay or the court orders a competency evaluation, declares a mistrial, grants a continuance because of a problem in securing evidence, or grants a continuance because of the court's crowded docket.

Here, the parties agree that Queen was in custody and the 150-day speedy trial period in K.S.A. 2020 Supp. 22-3402(a) thus applies. They also agree the State did not bring him to trial until 153 days after his arraignment. This means the court must order Queen's release from prison and his discharge from the charges unless an exception applies. The district court judge determined two exceptions applied. First, the court's crowded docket required the delay and, second, Queen caused the delay by acquiescing in the trial date. On appeal, the State raises a new argument it had not raised in the trial court, asserting the period set aside for the defendant to file motions and the time to consider the defendant's motions should not count in the speedy trial computation.

7

We consider each of the State's arguments in turn.

1. *Crowded Docket Exception*

Our consideration of the crowded docket exception rests in part on interpretation of the statutory language. We grant no deference to the district court's or the Court of Appeals' interpretation of a statute. But, like those courts, we seek to determine the Legislature's intent by examining the statute's wording. If that wording is plain and unambiguous, we apply it as written. If it is not clear, we can look to legislative history, background considerations, and canons of construction to help determine legislative intent. *Jarvis v. Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020).

Kansas' speedy trial statute begins by stating the State must bring a jailed defendant to trial within 150 days of arraignment "unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e)." K.S.A. 2020 Supp. 22-3402(a). The crowded docket exception is found in subsection (e). Our statutory analysis thus begins with an understanding that an extension of the speedy trial deadline for a reason stated in subsection (e) must stem from a continuance. This legislative intent finds reinforcement in the plain words of subsection (e)(4). It provides that "the time for trial may be extended" if, "because of other cases pending for trial, the court does not have sufficient time to" begin the trial within 150 days. It then echoes subsection (a)'s use of the word "continuance," stating that "[n]ot more than one continuance of not more than 30 days may be ordered upon this ground." K.S.A. 2020 Supp. 22-3402(e)(4).

The word "continuance" has a plain meaning. We commonly understand it to mean deferring from a fixed date to a later date. See Black's Law Dictionary 400 (11th

ed. 2019) (in context of procedure, "continuance" defined as "[t]he adjournment or postponement of a trial or other proceeding to a future date"); cf. *State v. Diaz*, 44 Kan. App. 2d 870, 877, 241 P.3d 1018 (2010) ("a continuance means that a new trial date is set").

Here, the first date the trial court announced was April 3. Once that date was set, neither Queen nor the State asked the court to defer the trial. And during the 150 days following Queen's arraignment, the district court judge entered no order continuing the trial or any other setting or deadline. Given those circumstances, *State v. Cox*, 215 Kan. 803, 803-05, 528 P.2d 1226 (1974), is instructive.

In *Cox*, the district court set the same trial date for four related but separate cases on the dockets of several judges. The court set other cases for trial on the same date before the same judges and designated the other cases as the ones the judges would first hear. Courts commonly stack several cases for trial on the same date to best use time set aside for jury trials on the court's calendar. Many cases will resolve through plea negotiations or otherwise on the eve of or day of trial, so having multiple cases set increases the chances that one will go to trial. In *Cox*, on the date set for the trials, the judges started jury trials on other cases and the four cases were "bumped" to a later date. 215 Kan. at 803. The new date fell past the statutory speedy trial deadline, which in the four cases was 180 days because all four defendants made bond. But the State did not formally ask for a continuance, and the appellate record included no orders formally continuing the trial dates and invoking one of the exceptions that allow an extension of the statutory speedy trial deadline.

On day 181, each of the four defendants asked the court to discharge him or her from liability on the charges because the State had not brought him or her to trial in 180 days. The district court found a speedy trial violation and dismissed the charges. The

9

State appealed. This court affirmed, stating that "for the continuance exception to be brought into play, the state must show that a continuance was granted by the trial court during the 180-day statutory period for one of the authorized reasons set" by the speedy trial statute. 215 Kan. at 805. See *State v. George*, 9 Kan. App. 2d 479, 681 P.2d 30 (1984) (although record supported crowded docket finding, district court made no order of continuance within statutory speedy trial window; case dismissed).

Likewise, here, the appellate record does not include an order entered during the 150-day statutory period that granted a continuance based on any of the reasons authorized in the speedy trial statute. Even so, the State argues the judge implicitly invoked the crowded docket exception. But the overall structure of the statute supports an interpretation that the exception applies only if the trial court enters an order deferring an initial setting to a future date. See *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015) (statutes must be construed as a whole, to reconcile and bring the provisions into harmony). Each exception in K.S.A. 2020 Supp. 22-3402 requires overt action on the part of the district court and does not automatically spring into operation.

For example, K.S.A. 2020 Supp. 22-3402(a) and (b) provide an exception when "the delay shall happen as a result of the application or fault of the defendant." Referring to that exception, K.S.A. 2020 Supp. 22-3402(c) says that in such cases, "the trial *shall be rescheduled* within 90 days of the original trial deadline." (Emphasis added.) Subsections (d), (e)(1), and (e)(2) contain similar provisions if a defendant's failure to appear or competency matters delay the trial.

But subsections (e)(3), relating to the unavailability of material evidence, and (e)(4), relating to crowded dockets, are different. Rather than require the district court to reschedule the trial, the statutory language provides grounds under which the court may extend the trial time through "[n]ot more than one continuance." The use of the words

10

"extended" and "continuance" in these exceptions is significant. See *Keel*, 302 Kan. at 574 (courts presume Legislature does not intend to enact meaningless legislation.) It reveals an intent by the Legislature to require an overt act—the granting of a continuance—for the exceptions to apply. These exceptions do not automatically spring into operation simply because of the existence of the statutory factors.

For the crowded docket exception of K.S.A. 2020 Supp. 22-3402(e)(4) to be applied, the district court must extend or continue the time. We leave for another day a question the Court of Appeals panel discussed: May a district court initially extend or continue the trial time beyond the speedy trial window if it made findings that it had a crowded docket, or must the court set the trial date within the 150 days and then order a continuance? *Queen*, 2020 WL 3579872, at *5. We need not resolve that question here because the judge did not invoke the exception. Instead, the district court judge set Queen's initial trial date 153 days after arraignment and did not cite the need to do so because of a crowded docket. Nor did any party request the court order a continuance. As a result, under the holding of *Cox* and similar cases, the crowded docket exception does not justify an extension of the speedy trial deadline beyond day 150.

We also observe that the record does not support the district court's finding of a crowded docket. An appellate court reviews a district court's factual findings for substantial competent evidence. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). This is defined as "such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion." *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). An appellate court does not weigh conflicting evidence, evaluate witness credibility, or redetermine questions of fact, and the court presumes the district court found all facts necessary to support its judgment. 288 Kan. at 65. Here, substantial competent evidence establishes that the court was busy and had a structured calendaring system for when jury trials would occur. But the record lacks substantial competent

11

evidence supporting—either explicitly or implicitly—the statutory requirement that "because of other cases pending for trial, the court [did] not have sufficient time to" begin the trial within 150 days. K.S.A. 2020 Supp. 22-3402(e)(4).

The State suggests otherwise, arguing sufficient facts allow us to conclude the district court implicitly made the findings necessary to invoke the crowded docket exception. In support it cites *State v. Dean*, 42 Kan. App. 2d 32, 208 P.3d 343 (2009), and *State v. Rodriguez-Garcia*, 27 Kan. App. 2d 439, 8 P.3d 3 (1999). These cases support the idea that a judge can implicitly invoke the exception, but the facts of the cases differ significantly from the circumstances leading to Queen's trial setting.

In *Dean*, a series of continuances led to the trial being set on the day the speedy trial deadline would expire. But, on that day, the court continued the trial again. The defendant filed a motion to dismiss because of the speedy trial violation, and a different judge heard the motion. The second judge held the reset trial fell within the 30-day extension allowed by the crowded docket exception and the record showed the first judge had implicitly relied on the exception because the first judge had another trial set that day. 42 Kan. App. 2d at 36-38.

Likewise, in *Rodriguez-Garcia*, the crowded docket exception was applied even though not explicitly invoked by the district court judge. Instead, the district judge had stated on the record, "'I don't have anything open'" until the date the trial was set to begin. That was sufficient, the Court of Appeals held, to invoke the exception. 27 Kan. App. 2d at 441.

But here, the district court judge, when setting the trial, did not say that April 2 was the first opening. Nor does the record show there was another case set on 150th day

12

after Queen's arraignment. This case is more like that in *State v. Edwards*, 291 Kan. 532, 243 P.3d 683 (2010), than *Dean* or *Rodriguez-Garcia*.

Like *Dean*, *Edwards* arose after a judge considering a motion to dismiss attempted to discern why another judge had set a trial past the speedy trial deadline. The second judge reasoned that the first judge must have been thinking of the crowded docket exception because everyone knew the court was the busiest in the state. The second judge cited *Rodriguez-Garcia* and its holding that the district court did not have to explicitly refer to its crowded docket before continuing the trial.

On appeal, this court acknowledged the holding in *Rodriguez-Garcia* allowing implicit invocation of the crowded docket exception but stopped short of adopting it because the facts did not support even an implicit finding that the court had continued the case because of a crowded docket. Indeed, the State had presented no evidence to show that other pending cases prevented the court from starting Edrick Edwards' trial at an earlier time. Nor did the record of the hearing where the first judge set the trial reflect that the judge considered whether there was an earlier opening for trial. That hearing was scheduled to determine Edwards' competency. But the defense stated it did not object to a finding of competence. The court then moved to scheduling the case for other proceedings, noting it would set the case for preliminary hearing. Counsel corrected the court, suggesting the court needed to set the case for trial. The court responded with a date. No other discussion occurred. On appeal, given that short exchange, this court held the record did not "support the motion judge's speculation that the judge setting the trial date intended to invoke the 'crowded docket' provisions." 291 Kan. at 543.

Queen's record on appeal is like that in *Edwards*. The record does not support a finding Queen's trial setting for April 2 was the first setting available because of other pending cases. Rather, the discussion at the arraignment hearing centered on the difficulty

13

of securing witnesses during spring break in March—not on conflicts with other trials. Later, during the hearing on Queen's motion to dismiss, the judge stated that "[h]ad this court known, though that we were going outside the 150 days, I would have moved cases to fit it in." Indeed, the district court judge acknowledged that the trial would not have been scheduled for April 2 if not for the mistaken belief that the date was within the statutory speedy trial window.

In sum, the crowded docket exception of K.S.A. 2020 Supp. 22-3402(e)(4) does not apply to extend Queen's trial date beyond 150 days. The record does not disclose substantial competent evidence establishing an order of continuance or a factual basis for concluding the court extended Queen's trial time because of other cases pending for trial.

2. *Acquiescence*

The speedy trial statute, besides extending the deadline for a continuance under subsection (e), extends the deadline for the time attributable to delays that are "a result of the application or fault of the defendant." K.S.A. 2020 Supp. 22-3402(a). The State argues such an extension applies here because Queen acquiesced to a setting outside the speedy trial deadline when the court asked both parties about availability during the week of April 2 and his counsel responded that the date "works for the defense." The district court judge agreed with the State's argument, finding that Queen acquiesced to the date.

But, as the Court of Appeals held, acquiescence within the context of a waiver of statutory speedy trial rights requires more than passive acceptance of a date offered by the court. For example, in *State v. Adams*, 283 Kan. 365, 370, 153 P.3d 512 (2007), this court held: "Although [Charles] Adams' defense counsel accepted the . . . trial setting, his acceptance is neither an acquiescence to a continuance nor the equivalent of a waiver of Adams' statutory right to a speedy trial." In *Adams*, neither side requested a continuance,

14

but the district court continued the trial on the mistaken expectation that the defendant would not appear. When the defendant did appear, the district court rescheduled the trial after some back and forth between the attorneys about availability. Adams' attorney did not object to the date chosen by the court. But that alone, we held, was not sufficient for the court to charge the time to the defendant. 283 Kan. at 370.

*Adams'* outcome finds support in a long line of this court's decisions. Kansas does not employ a "use it or lose it" approach to assertion of speedy trial rights, meaning that a defendant need not take affirmative steps to assert the speedy trial right or risk a finding of waiver. And in the speedy trial context, our caselaw has used "acquiescence" in a manner not fully consistent with that word's ordinary meaning. *State v. Hess*, 180 Kan. 472, 475, 304 P.2d 474 (1956), distills the general principles.

*Hess* discussed the distinction between actions by the defendant that produced a delay—actions that fall within the statutory language of "the delay shall happen as a result of the application or fault of the defendant"—and passive acceptance of a continuance or an untimely trial date:

> "'An accused need not insist upon, nor even ask for a speedy trial, nor need he protest against or object to the delay. Failure to object to continuance is not equivalent either to an application for such continuance or to a consent to the State's request for a continuance. [Citations omitted.] All that a defendant needs to do to retain the protection of the constitutional guaranty is to refrain from any affirmative act, application or agreement, the necessary and direct effect of which will be to delay the trial.'" *Hess*, 180 Kan. at 475.

More recently, in *Vaughn*, 288 Kan. 140, this court explained that the occasional reference to "acquiescence" in our speedy trial caselaw should not be read to include passive acceptance of a continuance. The *Vaughn* court noted the common meaning of

15

"acquiescence" includes passive acceptance. 288 Kan. at 145 (quoting Black's Law Dictionary 25 [8th ed. 2004]). "In Kansas, however, we have never held that passive acceptance of a continuance waives a defendant's speedy trial rights." 288 Kan. at 145. Citing *Adams*, 283 Kan. at 370, the *Vaughn* court observed that passive acceptance would conflict with our decisions holding that a defendant need not take any affirmative action to protect his or her right to a speedy trial. 288 Kan. at 145.

Instead, "[f]or acquiescence to result in a waiver of speedy trial rights, the State must demonstrate more than mere passive acceptance and must produce some evidence of agreement to the delay by the defendant or defense counsel." *Vaughn*, 288 Kan. at 145. See *State v. Brownlee*, 302 Kan. 491, 507-08, 354 P.3d 525 (2015) (differentiating situations in which counsel's conduct in acquiescing to a continuance did not equate with defendant's acquiescence). There must be an express or implied agreement to the delay, and where acquiescence is at issue "'prosecutors and the district courts are well advised to put consideration of the applicable time limit in the speedy trial statute on the record.'" *Vaughn*, 288 Kan. at 145 (quoting *State v. Arrocha*, 30 Kan. App. 2d 120, 127, 39 P.3d 101 [2002]).

As alluded to in *Vaughn*, this court has repeatedly explained the underlying principle for this rule is that the burden to ensure speedy trial is on the State:  "The rule is that the defendant need not take any affirmative action. The duty and responsibility of providing the accused with a speedy trial is on the officers of the state." *In re Trull*, 133 Kan. at 168. See *State v. Dewey*, 73 Kan. 739, 743, 88 P. 881 (1907) ("The weight of authority is that the statute is imperative, and should receive a liberal construction in favor of liberty, having always in mind that its purpose is not to shield the guilty but to protect the innocent."). For these reasons, even if the delay is the fault of the court, and not the State, the delay will not be charged against the defendant. *Adams*, 283 Kan. at 370.

16

Here, Queen's counsel's statement that the proposed trial date "works for defense" was a passive response to the judge's inquiry into availability and does not rise to the level of acquiescence to a continuance beyond the speedy trial deadline or a waiver of the statutory speedy trial right. Under our caselaw, something more is required than this type of passive response.

Even so, the district court judge held, and the State now contends, that defense counsel had a duty to speak up because Kansas Rule of Professional Conduct (KRPC) 3.3 (2020 Kan. S. Ct. R. 353), imposes on Kansas attorneys a duty of candor toward the court. KRPC 3.3 prohibits an attorney from knowingly misleading the court as to an incorrect statement of law or fact. We first observe that the record fails to establish that defense counsel knowingly misled the court. We also note the tension between the district court judge's expectations of counsel and both our caselaw and defense counsel's role in the adversarial process in a criminal case, tensions the Court of Appeals discusses. *Queen*, 2020 WL 3579872, at *7. We refrain from that discussion because of the guidance in comment 20 to the prefatory scope of the KRPC. Comment 20 instructs that a violation of a KRPC does not create a presumption that a legal duty has been breached, does not necessarily warrant nondisciplinary remedies, should not be used as procedural weapons, and does not provide adversaries with standing to seek enforcement of the rules. Supreme Court Rule 226, Comment 20 (2020 Kan. S. Ct. R. 283). In other words, nothing in the KRPC alters our longstanding caselaw that a criminal defendant has "no obligation to take affirmative action" to protect his or her speedy-trial right. *State v. Sievers*, 299 Kan. 305, 307-08, 323 P.3d 170 (2014).

In short, defense counsel's statement confirming he was available for trial on the specific date offered by the court did not cause a delay that "happen[ed] as a result of the application or fault of the defendant," as that phrase is used in the speedy trial statute.

17

K.S.A. 2020 Supp. 22-3402(a). Such an agreement was not an affirmative action that prevented a speedy trial. *Hess*, 180 Kan. at 475.

### 3. *No Time Attributable to Defense Motions*

Finally, in an argument raised for the first time on appeal, the State argues we should hold that Queen delayed the trial during the period between the deadline for filing motions and the date of the hearing on the motions.

The State concedes that it did not raise this argument in the district court. Usually, a party cannot raise new issues on appeal. But there are exceptions, including when (1) the new theory involves only a question of law on proven facts and is determinative; (2) consideration is necessary to serve the ends of justice; or (3) the district court is right for the wrong reasons. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Citing the first and third exceptions, the State argues it presents a question of law involving undisputed facts that would allow for a finding that the district court was right for the wrong reason.

We disagree that this issue presents a pure question of law. Instead, issues of fact exist that preclude use of the first or third exceptions. Perhaps because it shared this conclusion, the Court of Appeals panel did not address this argument. We often would remand to the Court of Appeals in such a circumstance. But judicial economy suggests a different path here given that the State did not properly preserve the argument for appellate review.

To explain that lack of preservation, we begin by noting that the State must establish that "the delay shall happen as a result of the application or fault of the defendant." K.S.A. 2020 Supp. 22-3402(a). Often the determination of whether this

18

provision applies depends on the facts. And whether a defendant's actions cause a delay often involves issues of fact. See *Vaughn*, 288 Kan. at 143; *Adams*, 283 Kan. at 369-70. The circumstances surrounding the handling of Queen's motions present such a situation.

Immediately after setting Queen's trial date, the district court judge set the deadline for filing motions and the date of the motions hearing. Some more detail helps explain the exchange. After the judge set the trial date, she asked whether the defense would like to schedule a hearing for pretrial motions. Defense counsel said yes, and the court established a deadline to file motions and scheduled a hearing on the motions. These additional deadlines and settings did not lead to an adjustment of the trial date, and no party requested a continuance because of the motions (or for any other reason). And the judge never conveyed that she chose a trial date after considering the time needed for the filing and consideration of motions.

The State in its petition for review acknowledges that "Queen's pretrial motions did not lead to the district court continuing or rescheduling the trial. In fact, the trial court built the motions deadline and hearing into the schedule at arraignment." These circumstances distinguish Queen's situation from the cases cited by the State. The State recognizes as much when, in its petition for review, it stated it "is unaware of any cases where, as here, the district court scheduled the trial outside the relevant statutory period at arraignment."

The State also argued, however, that the "set period only exists because Queen specifically asked for the time." In its brief before the Court of Appeals, the State added that "it is clear from the record that the district court and Queen contemplated robust pretrial motion practice . . . . The district court, therefore, built in enough time for Queen to research, write, and file those motions—and, just as importantly, time enough to hear them." But that is not clear from the record. In the exchange as the judge set dates for

19

filing motions, replies to motions, and a hearing on the motions, the judge twice referred to dates for *both* parties' motions. And there was no expectation that Queen must file a motion. Contrary to the State's argument, it is not clear there was a delay, much less a delay attributable to Queen.

The State suggests the lack of delay does not matter because a motion need not lead to a continuation of the trial date before a court can toll the running of the speedy trial deadline. Indeed, the relevant language from K.S.A. 2020 Supp. 22-3402(a) does not use the word continuance as does a different provision in the paragraph or as does the crowded docket exception in (e)(4). Instead, the relevant language states a defendant must be brought to trial within 150 days of arraignment "unless the delay shall happen as a result of the application or fault of the defendant." The plain language refers to a delay. And, here, we do not have a finding from the district court judge that Queen caused a delay. Rather, the transcript suggests the judge set the trial date and then set the deadline for motions in a way that would prevent delaying the trial because of motions. And that is what happened—the parties met the deadlines and no continuances were necessary.

The case cited by the State reinforces that no continuance is necessary before the speedy trial time can be tolled because of the fault of the defendant. See *State v. Martinez*, No. 102,512, 2010 WL 2816816 (Kan. App. 2010) (unpublished opinion). Yet *Martinez* reinforces that a court must engage in a case specific, fact intensive inquiry to determine whether a delay happens because of the application or fault of the defendant.

In *Martinez*, after arraignment but before a trial date had been set, the defendant filed pretrial motions. The district court determined some delay was attributable to the defendant because of the motions. On appeal, the defendant argued the delay could not be attributed to her because a trial date had not yet been set. The Court of Appeals panel disagreed. It first held that the speedy trial statute did not require the scheduling of a trial

20

before delays could be attributed to the defendant. It then held that under the facts of the case the district court properly charged the various delays to the defendant. 2010 WL 2816816, at *2-3.

But the motion practice and other proceedings in *Martinez* delayed the setting of the trial. The same can be said of the four cases cited in *Martinez*: *Vaughn*, 288 Kan. at 144; *State v. Bean*, 236 Kan. 389, Syl. ¶ 2, 691 P.2d 30 (1984); *State v. Clemence*, 36 Kan. App. 2d 791, 798, 145 P.3d 931 (2006), *rev. denied* 283 Kan. 932 (2007); and *State v. Arrocha*, 30 Kan. App. 2d 120, 123, 39 P.3d 101 (2002). In *Vaughn*, 288 Kan. at 147, the district court continued the trial after the defendant filed a motion on the date of the original trial setting. The other three cases *Martinez* cites involved defense requests for continuances of trial dates or in the filing of motions that led to deferring the trial. *Bean*, 236 Kan. at 391-92, *Clemence*, 36 Kan. App. 2d at 798, and *Arrocha*, 30 Kan. App. 2d at 127. But Queen did not seek to continue his trial. Nor can we conclude on the record before us that his motion definitely caused a delay.

In a case not cited by the State, *State v. Southard*, 261 Kan. 744, 933 P.2d 730 (1997), the court attributed to the defendant a delay caused when, at arraignment, the defendant requested a motion hearing. This court held that "defense counsel's request at arraignment for a motion hearing, followed by the district court's accommodation of reserving the 2 hours counsel suggested for motions to suppress, requires the charging of the period between arraignment and the initially scheduled motion hearing to the defendant." 261 Kan. at 748. Similarly, in *Dodge City v. Downing*, 257 Kan. 561, 563, 894 P.2d 206 (1995), this court concluded 30 days were chargeable to the defendant, consisting of the 16 days between the defendant's filing of a motion to suppress and deadline for filing briefs on the motion plus 14 days as a reasonable amount of time for the district court to resolve the motion. The defendant's filing of the motion to suppress fell under the "plain reading of the statute" because the delay arose on the application of

21

the defendant. 257 Kan. at 563. But see *State v. Roman*, 240 Kan. 611, 613, 731 P.2d 1281 (1987) (recognizing some reasonable delay to rule on defense motion may be charged to defendant, but not the entirety of a 179-day delay). While not entirely clear, it appears the motion practice in these cases delayed the setting of the trial date—something that did not appear to happen because of Queen's motions.

None of these cases support the blanket proposition that courts should automatically charge the time required by all pretrial motion hearings to the defense—the resolution of each case was a fact-specific determination. And none of these cases parallel this one where the court set the trial date and then scheduled the motions and related procedures in a way that would avoid delaying the trial setting. Applying the plain language of K.S.A. 2020 Supp. 22-3402(a), the record does not establish definitively whether a delay occurred "as the result of the application or fault of the defendant." Findings by the district court judge might have supported the State's argument. But the State failed to raise the issue to the judge. It thus also failed to preserve the issue for appellate review.

CONCLUSION

"When a defendant's right to speedy trial has been violated, the 'only possible remedy' is dismissal of the charges." *State v. Wilson*, 227 Kan. 619, 622, 608 P.2d 1344 (1980).

The obligation to bring the defendant to trial within the statutory speedy trial period rests only on the State. *Sievers*, 299 Kan. at 307. A defendant need not take affirmative steps to assert that right, and the defense counsel's passive acceptance of a trial date does not rise to the level of waiver or acquiescence. The State violated the defendant's statutory speedy trial rights. The State asks us to hold that important policy

22

reasons warrant us reversing the Court of Appeals. But """questions of public policy are for legislative and not judicial determination, and where the legislature does so declare, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.""" *Jarvis*, 312 Kan. at 170.

The plain language of K.S.A. 2020 Supp. 22-3402(a) directs that unless an exception applies that tolls or extends the speedy trial deadline, the case must be dismissed if the State fails to bring a jailed defendant to trial within 150 days of arraignment. Finding that no exceptions or extensions apply, we reverse Queen's convictions, vacate his sentences, and remand the case to the district court with directions to dismiss the charges against him with prejudice. Given this disposition, we need not address Queen's other issues on appeal.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed, and the case is remanded with directions.