NOT DESIGNATED FOR PUBLICATION

No. 126,542

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LINDSEY LEE WABAUNSEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JESSICA HEINEN, judge. Oral argument held March 11, 2025. Opinion filed April 4, 2025. Affirmed.

*Lindsay Kornegay*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Lindsey Lee Wabaunsee appeals her convictions for burglary of a vehicle, criminal damage to property, theft, possession of marijuana or tetrahydrocannabinols (THC), and possession of drug paraphernalia. On appeal, she contends: (1) the district court committed clear error in failing to instruct the jury on the defense of mistake of fact; (2) the district court committed clear error by failing to instruct the jury on nonexclusive possession; (3) the district court committed reversible error by failing to provide a unanimity instruction; (4) the State committed prosecutorial error by misstating evidence in its closing argument; and (5) the district court erred

1

in allowing the State to constructively amend the offense of theft when the jury instructions broadened the basis of her charge. Based on our review of the record on appeal, we find Wabaunsee's arguments to be unpersuasive. Thus, we affirm.

FACTS

On June 1, 2021, Saundra Priest was driving her silver Dodge Stratus northbound on Highway 75 just north of Topeka when the car stopped running. Saundra left her vehicle on the side of the highway. The next day, Saundra's mother, Mary Lou Priest, and Saundra's uncle, Jessie, went to the car with plans to jump it or get it towed.

When Priest and Jessie arrived at the Dodge Stratus, they saw a red truck parked behind it, and two women were at the vehicle. The red truck did not have a tailgate, and a battery sat in the bed of the truck. Priest called her daughter to see if she had sent anybody else to look at her car, and Saundra confirmed that she had not sent anyone to the car.

One of the women, later identified as Wabaunsee, was under the hood of the car. The other woman, later identified as Jessica Garza, was in the passenger seat of the car. Priest testified that Wabaunsee was "tinkering with the battery," and Garza was using a screwdriver to try to remove the radio. When Priest asked what they were doing at the car, Wabaunsee told her that "Henry" had sent them to look at the car. Priest told her that they did not know Henry, and the car belonged to her daughter.

Priest told the women to "hold on just a minute" while she got her phone to call the police. As Priest called law enforcement, the women left. Priest took a photo of the back of Wabaunsee's truck, including her license plate, as she drove away. Priest then looked inside her daughter's car, and she noticed the dash was torn up and the radio was slightly pulled out. Priest noticed that documents were missing from the glove box of the

2

car, including receipts, car insurance papers, and registration. Jessie testified that he noticed the battery cables of the car were loose.

Deputy Daniel Gragg arrived and spoke with Priest and Jessie. Gragg obtained the suspects' information from Priest and learned that the red truck was a Chevy Colorado registered to Wabaunsee. Deputy Virgil Collins also responded to the call.

Later that evening, Deputy Gragg located the red Chevy Colorado on North Kansas Avenue in Topeka and initiated a traffic stop. Gragg approached the occupants of the truck and asked for their identification. Wabaunsee was driving the truck, and Garza was sitting in the passenger seat.

Wabaunsee immediately asked Deputy Gragg if the stop "was about the vehicle on the highway earlier." Gragg told Wabaunsee "yes," and he asked her, "What was that about?" Wabaunsee told Gragg that they had stopped at the vehicle on the side of US 75 Highway to help a friend named Lacey Bellfield, but they were apparently at the wrong vehicle. During this conversation, Gragg noticed that Wabaunsee had a police scanner on her phone.

As Deputy Gragg spoke with Wabaunsee, he saw an open container of alcohol and what looked like the burnt end of a marijuana roach in the center console of the truck. With Deputy Collins' assistance, he detained both women separately and searched the truck. During the search, the law enforcement officers found a marijuana roach, several backpacks, a machete, an axe, a crowbar, a screwdriver with a green handle that had blood on it, numerous power tools, tools generally used to unlock and gain access to the inside of vehicles, a baggie containing a waxy substance with vegetation pressed into it inside one of the backpacks, and the registration and other paperwork for Priest's Dodge Stratus. Lab tests later confirmed the presence of THC in the marijuana roach and in the

3

waxy substance found in the baggie. The law enforcement officers also found a battery in the bed of the truck.

Both Wabaunsee and Garza were taken to the law enforcement center, and Detective Jesse Julian interviewed both women separately. After Julian informed Garza of her *Miranda* rights, Garza told Julian that Wabaunsee and Garza went to the Dodge Stratus "to get the valuables out of a car for a friend named Lacey that she knew through [Wabaunsee]." Garza said that she did not know Lacey, and she did not have any contact information for her.

During her interview, Garza admitted to Detective Julian that she got into the Dodge Stratus and started taking items out of it. Garza claimed she used the green-handled screwdriver—which was found during the search of the red truck—to attempt to remove the radio from the dash. While doing this, she damaged the dash and cut her hand. Garza had a Band-Aid on her hand during the interview. Garza also admitted taking documents and ratchet straps from the Dodge Stratus.

After informing Wabaunsee of her *Miranda* rights, Detective Julian interviewed her about her presence at the Dodge Stratus. Wabaunsee told Julian that Garza had been in touch with Lacey to go get her items—specifically mentioning "'the battery'"—out of the vehicle. When they got to the vehicle, she got out of her truck, popped the hood, and began trying to get the battery out of the vehicle. Wabaunsee said they were not there long before someone came up and they heard a male voice. Wabaunsee said she thought they must have the wrong vehicle.

Wabaunsee denied knowing Lacey or having contact information for her, but she thought her last name began with "B." Wabaunsee told Julian that "it was through [Garza] that she heard Lacey wanted them to get the items out of the vehicle—or get the

4

battery out." Wabaunsee told Detective Julian that the blue and red backpacks in the truck belonged to her, but the black backpack was probably owned by a man named "Mike."

Both Wabaunsee and Garza were arrested and charged based on this incident. Garza entered into a diversion agreement with the State and completed it prior to Wabaunsee's trial. Wabaunsee was charged in an amended complaint with burglary of a vehicle, misdemeanor criminal damage to property, misdemeanor theft, possession of marijuana, and possession of drug paraphernalia.

The case proceeded to a jury trial on November 14-16, 2022. The State presented the testimony of Priest, Jessie, Deputy Gragg, Deputy Collins, Garza, Detective Julian, and Kamala Hinnergardt, an employee with the Kansas Bureau of Investigation (KBI) at the Forensic Science Center. The State also presented five exhibits, including the body cam video of Gragg and Collins, Julian's interviews of Wabaunsee and Garza, and the KBI forensic report.

At trial, Garza testified that Wabaunsee asked her to help get some stuff out of a car for her friend Lacey. Garza claimed she did not know Lacey. When they arrived at the car, Wabaunsee got into the driver's seat, popped the hood, and then went under the hood to remove the battery from the car. Garza testified that she got into the passenger's seat and started grabbing stuff out of the vehicle to help clean it out. Garza testified that she injured her hand while attempting to remove the radio from the car's dash. On cross-examination, Garza admitted that she took some documents and ratchet straps from the car.

Garza testified that as she was cleaning out the car, Priest and Jessie arrived at the car and asked what they were doing. Garza said that Wabaunsee answered them, but Garza just got out of the car and left with Wabaunsee. Garza said that Priest claimed the car belonged to her daughter, and they were at the wrong vehicle. Garza testified that she

5

was scared because she was not expecting anyone to show up. Garza said that it was not the car they thought it was, so they left.

The jury found Wabaunsee guilty of all charges. The district court sentenced Wabaunsee to seven months in prison but suspended her sentence and placed her on probation for 12 months. Wabaunsee filed a timely notice of appeal.

ANALYSIS

*Failure to Instruct on Mistake of Fact*

Wabaunsee contends for the first time on appeal that the district court should have sua sponte instructed the jury on the defense of mistake of fact. This argument is based on her claim that one of her defenses at trial was that she believed she was lawfully changing the battery in a vehicle owned by her friend, Lacey. Wabaunsee asserts such an instruction was legally and factually appropriate, and there is a real possibility that the jury would have acquitted her of three of the charges if it had been properly instructed. Wabaunsee admits she did not request the mistake of fact instruction, but she claims failing to give the instruction amounts to clear error. Accordingly, Wabaunsee asks the court to reverse her convictions for burglary of a vehicle, criminal damage to property, and theft and remand the case for a new trial on those charges.

In response, the State concedes that the mistake of fact instruction was legally and factually appropriate. But the State claims failing to give the instruction in this case is not reversible under the clear error standard. Wabaunsee acknowledges that she did not request the mistake of fact instruction that she now alleges the district court erred in failing to provide, so this court's standard of review is clear error. See K.S.A. 22-3414(3); *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

6

We follow a multi-step analysis when reviewing a claim that the district court erred in failing to provide the jury with a jury instruction—which in this case is regarding a theory of defense. First, we consider de novo whether the court can or should review the issue from both jurisdiction and preservation viewpoints. Next, we apply an unlimited review to whether the instruction was legally and factually appropriate. If so, we then move to the final step, which is whether the error requires reversal. In this case, Wabaunsee has the burden to show clear error; in other words, Wabaunsee must convince us that the jury would have reached a different verdict if the error had not occurred. 317 Kan. at 242; *State v. Berkstresser*, 316 Kan. 597, 605, 520 P.3d 718 (2022).

Although Wabaunsee failed to request the jury instruction or object to the district court's failure to give the instruction, this court may review instructional issues for the first time on appeal. K.S.A. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction, . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."); see *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018). When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. The party claiming clear error—in this case Wabaunsee—has the burden to show both error and prejudice. *Bentley*, 317 Kan. at 242.

We have unlimited review to determine whether an instruction was legally and factually appropriate. *State v. Holley*, 313 Kan. 249, 254, 485 P.3d 614 (2021). In doing so, we determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Under K.S.A. 21-5207(a), a person's ignorance or mistake of fact may legally negate the requisite mental state of a crime. A finding of the existence of a mistake of fact

may be legally and factually appropriate when a defendant acknowledges committing an act that satisfies the basic elements of the crime but asserts an honest mistake about the character of the criminal act which may negate the culpable mental state or specific intent needed to prove the act. See *State v. Rizal*, 310 Kan. 199, 208-09, 445 P.3d 734 (2019); *State v. Diaz*, 44 Kan. App. 2d 870, 874-75, 241 P.3d 1018 (2010). Here, Wabaunsee is challenging the element that she intentionally or knowingly committed these crimes.

Wabaunsee claims for the first time on appeal that because she asserted a defense based on mistake of fact at trial, the district court should have provided a jury instruction modeled after PIK Crim. 4th 52.090 (2021 Supp.), which provides: "It is a defense in this case if by reason of ignorance or mistake of fact the defendant did not have at the time the mental state which the statute requires as an element of the crime." Wabaunsee argues this instruction was legally and factually appropriate based on her claim that she was at the car to switch out the battery for her friend, Lacey. The jury heard evidence regarding Wabaunsee's defense through Deputy Gragg's testimony and in the statements she made in her interview with Detective Julian. In addition, this defense was presented by counsel during opening argument and closing argument.

The State agrees that a mistake of fact could have legally negated the mental state of intent, which is an element of burglary, theft, and criminal damage to property. See K.S.A. 21-5207(a). In addition, the State agrees with Wabaunsee that a jury instruction for the mistake of fact defense was legally appropriate given Wabaunsee's defense that she was at the vehicle to switch out the battery for her friend, Lacey, who asked her to do so. In addition, she claimed she did not know that Garza was taking items from inside the vehicle or damaging the dashboard to take the radio.

Given that the parties agree a jury instruction for mistake of fact is legally and factually appropriate, we review the district court's failure to give the instruction for clear error. See *Bentley*, 317 Kan. at 242. In reviewing for clear error, we consider whether we

8

are firmly convinced the jury would have reached a different verdict if the instruction on mistake of fact had been given. *Bentley*, 317 Kan. at 242. Here, the district court instructed the jury that the State had the burden of proof on the elements of each offense and that if the jury had a reasonable doubt as to the truth of the elements required to be proven by the State, then the jury should find the defendant not guilty.

All three of the convictions challenged by Wabaunsee are specific intent crimes and require the State to prove a mental state regarding the charged crime. For the burglary charge, the jury was properly instructed that the State was required to prove that Wabaunsee entered the vehicle without authority and with the intent to commit a theft. See K.S.A. 2020 Supp. 21-5807(a)(3). For the theft charge, the jury was properly instructed that the State was required to prove that Wabaunsee intended to permanently deprive the owner of the use or benefit of the property. See K.S.A. 2020 Supp. 21-5801(a). And for the criminal damage to property charge, the district court properly instructed the jury that the State must prove that Wabaunsee knowingly damaged, destroyed, or substantially impaired the use of property without the owner's consent. See K.S.A. 2020 Supp.  21-5813(a)(1).

Under these circumstances, if the jury had believed Wabaunsee's version of events, it could not have found her guilty of the crimes because of the required intent elements of each crime. For the charge of burglary, if it believed Wabaunsee's story that she was merely changing out the battery at the request of Lacey, the jury could not have found that she entered the vehicle "without authority" and to commit a theft. For the charge of theft, if the jury had believed Wabaunsee, it would not have found that she intended to "permanently" deprive the owner of the use or benefit of the property. Finally, for the charge of criminal damage to property, even though the required intent was only that she knowingly damaged, destroyed, or substantially impaired the use of the property, it is unlikely that a mistake of fact instruction would have changed the jury's

verdict because it did not believe Wabaunsee's version of events on the burglary and theft.

As part of its general instructions to the jury, the district court instructed that the jury must determine the weight and credit to be given to the testimony of each witness, and the jury had the right to use common knowledge and experience concerning the matter about which a witness has testified. In addition, the district court also instructed the jury that it could find Wabaunsee guilty if she aided another to commit the crime. And part of that instruction also informed the jury that "[a]ll participants in a crime are equally responsible without regard to the extent of their participation" in the crime, but "mere association with another person who actually commits the crime" or "mere presence in the vicinity of the crime" is not sufficient to make a person criminally responsible for the crime.

Although both Wabaunsee and Garza told officers they were at the car to help Lacey, each woman said they did not really know Lacey and that the other person contacted her and arranged to visit the vehicle. In addition, the search of Wabaunsee's vehicle produced items taken from Priest's vehicle as well as tools that are often used to break into vehicles. Under these circumstances, it is understandable that the jury rejected Wabaunsee's version of events that the incident was merely a misunderstanding.

Wabaunsee relies on *State v. Ortega*, 300 Kan. 761, 785, 335 P.3d 93 (2014), to support her position. In that case, the Kansas Supreme Court found that the failure to give an unrequested mistake of fact instruction—coupled with the prosecutor's misstatement of law in closing arguments—resulted in reversible error in a conviction for attempted aggravated interference with parental custody. 300 Kan. at 785. The court found that the prosecutor's misstatement of law was so intertwined with the district court's failure to instruct the jury on the correct law that it considered the cumulative effect of the errors in determining one of Ortega's convictions should be reversed. 300 Kan. at 786.

Wabaunsee argues that as in *Ortega*, the jury was instructed regarding intent, but there was no direction regarding how to consider or apply the information regarding mistake of fact. But in Wabaunsee's case, there was no misstatement of law by the prosecutor, and the jury was properly instructed regarding the specific intent required for each of the crimes. As such, the present case is distinguishable from the holding in *Ortega*.

The jurors heard evidence that Wabaunsee thought she was at the vehicle to help Lacey and did not intend to commit burglary, theft, or criminal damage to property. The jury was instructed that it could weigh this evidence that Wabaunsee lacked the specific intent to commit the crimes and decide on the weight and credibility to be afforded the evidence. Based on the jury's verdict, it appears the jury rejected Wabaunsee's version of events and instead found she had the specific intent to commit the crimes. Accordingly, a jury instruction regarding mistake of fact is unlikely to have resulted in a different verdict, and we find that Wabaunsee has failed to show clear error.

*Failure to Instruct on Nonexclusive Possession*

Wabaunsee next contends that the district court erred by not giving a nonexclusive possession instruction to the jury because both Wabaunsee and Garza had access to the items that contained THC, and Wabaunsee denied ownership of the items. Wabaunsee admits she failed to request a jury instruction regarding nonexclusive possession, but she asserts the district court committed clear error requiring reversal by failing to instruct the jury that her mere proximity to the items was not enough to prove that she possessed the items. The State responds that Wabaunsee has failed to show that the jury would have reached a different verdict if the nonexclusive possession instruction had been given.

Wabaunsee did not request a jury instruction on nonexclusive possession. Even though Wabaunsee failed to request the jury instruction or object to failing to give the

11

instruction, we may review instructional issues for the first time on appeal. K.S.A. 22-3414(3); *McLinn*, 307 Kan. at 317-18. When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. The party claiming clear error—in this case Wabaunsee—has the burden to show both error and prejudice. *Bentley*, 317 Kan. at 242.

We have unlimited review to determine whether an instruction was legally and factually appropriate. *Holley*, 313 Kan. at 254. In doing so, we determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Wabaunsee argues—and the State agrees—that a jury instruction on nonexclusive possession was legally appropriate because the jury was required to consider more than Wabaunsee's mere proximity to the contraband. Both possession of marijuana and possession of drug paraphernalia contain the essential element of possession. K.S.A. 2020 Supp. 21-5706(b); K.S.A. 2020 Supp. 21-5709(b). At the time that Wabaunsee was found with the THC and drug paraphernalia in her truck, the Kansas Legislature defined possession as "having joint or exclusive control over an item with knowledge of or intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2020 Supp. 21-5111(v). As such, possession may be exclusive, held jointly, or constructive if a person keeps an item in a place where they have some measure of access and right of control. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

In addition, the Kansas Pattern Instructions include a "nonexclusive possession" instruction as part of the pattern instructions for possession cases. See PIK Crim. 4th 57.040 (2022 Supp.). This PIK instruction informs the jury that it cannot be inferred that the defendant knowingly possessed the item unless there are other circumstances linking

12

the item to the defendant. It also informs the jury about additional evidence to consider when a defendant is in nonexclusive possession of an automobile, including:

- whether the defendant previously participated in the sale of a controlled substance;
- whether the defendant used controlled substances;
- whether the defendant was near the area where the controlled substance was found;
- whether the controlled substance was found in plain view;
- whether the defendant made any incriminating statements;
- whether the defendant's behavior was suspicious; and
- whether the defendant's personal belongings were near the controlled substance. PIK Crim. 4th 57.040.

When a defendant is in nonexclusive possession of a vehicle, the defendant's mere presence or access to the drugs is not enough to show possession without other incriminating factors. See *State v. Keel*, 302 Kan. 560, Syl. ¶ 2, 357 P.3d 251 (2015). As a result, a jury instruction regarding nonexclusive possession is legally appropriate to guide the jury through deliberations.

A nonexclusive possession instruction was also factually appropriate in this case. The evidence at trial showed that both Wabaunsee and Garza were inside Wabaunsee's truck at the time that law enforcement stopped and searched the vehicle. Since Wabaunsee was not the only person with access to the items inside of the truck, the jury instruction on nonexclusive possession was factually appropriate. See *State v. Hazley*, 28 Kan. App. 2d 664, 672-73, 19 P.3d 800 (2001); *State v. Widener*, No. 122,591, 2021 WL 4127735, at *5 (Kan. App. 2021) (unpublished opinion) (an instruction is factually

appropriate when the evidence showed the defendant was not the only person with access to the area where the drugs were found).

A nonexclusive possession instruction was legally and factually appropriate in this case, so we now consider whether failure to give that instruction resulted in clear error. In reviewing for clear error, we consider whether we are firmly convinced the jury would have reached a different verdict if the instruction on nonexclusive possession had been given. *Bentley*, 317 Kan. at 242.

Wabaunsee claims that the district court's failure to give the nonexclusive possession instruction in this case lowered the State's burden of proof for the charges of possession of marijuana and possession of drug paraphernalia. The State contends that it met the requisite burden of proof, noting that the jury was properly instructed on the burden of proof. In addition, Wabaunsee presented her argument that she did not possess the marijuana or the drug paraphernalia to the jury. Instead, she claimed the marijuana in the backpack probably belonged to a guy named Mike.

In closing argument, defense counsel emphasized that proximity does not equal possession:

"The fourth count is possession of marijuana. Now, this marijuana was found in a backpack. And I know there was a lot of talk about those two black backpacks that were found. I know detective [Julian] asked both [Wabaunsee] and [Garza] if those backpacks were theirs. They both said no. Could Detective [Julian] have done some things to probably figure out whose backpacks they were? Sure. [Wabaunsee] said she thought they were her friend Mike's. She played two voicemails about Mike. Detective [Julian] didn't ask for Mike's number, didn't call him, didn't try to find him. [Wabaunsee] is the only one who thought she knew whose backpacks they were. Everybody else just said: Not mine. Nobody took any fingerprints, nobody took any DNA, nobody took any evidence. In fact, we didn't even see those drugs today, ladies and gentlemen. And you heard the process of collecting that evidence and you heard how that evidence is stored

14

and cataloged carefully. And the State knows exactly where that evidence is, but they didn't even show you. I think that says something. And I think that because *proximity does not equal possession*, and no other evidence exists, we would ask you to find [Wabaunsee] not guilty of possession of marijuana.

"The fifth and final Count is possession of drug paraphernalia. That is the baggie. The baggie that the THC was stored in, was also found in the backpack. And again, ladies and gentlemen, we haven't seen it. We don't know where it is. Person who tested it testified from her lab report. We don't know where that is. We don't know where those drugs are and where they were found in a backpack. [Wabaunsee] has offered the only explanation about whose backpack that might have been. And the police, whose job it is to investigate this, decided not to. Now we're asking you the jury of 12 people who weren't there at the time, who have no specialized knowledge whatsoever to [assign] possession to somebody who says they didn't possess it. And says, hey, I think this person might have possessed it, but nobody did anything. So we would ask you to find her not guilty." (Emphasis added.)

The State presented evidence that law enforcement found at least one marijuana roach in plain sight in the center console of the truck which was within Wabaunsee's reach and control. Additional marijuana was found in a baggie inside a black backpack in the back of Wabaunsee's truck. Garza denied ownership of the backpack. And Wabaunsee claimed that the backpack probably belonged to a guy named Mike, but she did not produce the voicemail for law enforcement that she claimed proved that he left it in her truck. Although Wabaunsee denied possession of the drugs and drug paraphernalia, the items leading to the charges were found in a backpack within the backseat of a truck which was registered to her, and she was also sitting within arm's reach of a marijuana roach in plain sight.

In addition, defense counsel argued to the jury that mere proximity is not enough to equal possession, and the district court properly informed the jury of the State's burden of proof. The jury knew that Wabaunsee claimed that the black backpack belonged to

15

Mike. Wabaunsee claimed she had voicemails on her phone confirming that the backpack belonged to Mike, but she failed to produce those voicemails for law enforcement. Due to the nature of Wabaunsee's defense that the backpack belonged to someone else, the jury was compelled to consider the issue of nonexclusive possession. Yet after weighing the evidence and the credibility of the witnesses, the jury unanimously found Wabaunsee guilty of both possession of marijuana and possession of drug paraphernalia. In light of this, we find it to be unlikely that the jury would have reached a different verdict if the jury instruction for nonexclusive possession had been given and conclude that Wabaunsee has failed to establish clear error.

*Failure to Submit a Unanimity Jury Instruction*

Wabaunsee also contends that the district court committed reversible error by failing to give a unanimity instruction. She argues that the State presented evidence of two legally separate acts of burglary of a vehicle: (1) under a principal theory of liability based on Wabaunsee's act of popping the hood with the intent to remove the battery from the vehicle; and (2) under an accomplice theory of liability that Wabaunsee was criminally responsible for Garza's act of entering the inside of the Dodge with the intent to take the radio and other items inside. With two acts presented by the State and the State's failure to elect a single act for the offense of burglary of a vehicle, Wabaunsee argues the district court committed reversible error by failing to give a unanimity instruction.

The State responds that the two acts that Wabaunsee claims were presented as separate acts were merely a single act of burglary of a vehicle by Wabaunsee and Garza. Because the acts did not occur at different times or in different locations, and the acts were not the result of a fresh impulse, the State claims there were no multiple acts that would have necessitated a unanimity instruction. In the alternative, the State claims the State elected Wabaunsee's act of popping the hood with the intent to remove the battery

16

as the act. Finally, the State contends that reversal is not required because any error in the failure to give the unanimity instruction was not clearly erroneous.

A defendant in a criminal case has the constitutional right to a unanimous verdict under the Sixth Amendment as applied to the states under the Fourteenth Amendment. *Ramos v. Louisiana*, 590 U.S. 83, 93, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020) (holding that a defendant in a criminal case has the constitutional right to a unanimous verdict). In addition, under Kansas statutory law, a defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421. In a case of multiple acts, where any one act could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. *State v. Garcia-Martinez*, 318 Kan. 681, 693, 546 P.3d 750 (2024).

Accordingly, to ensure jury unanimity in multiple acts cases, at least one of two things should happen: (1) the State must elect which act it is relying on for the charge; or (2) the district court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. 318 Kan. at 693. The pattern instruction that Wabaunsee now asserts should have been given states: "The State claims distinct multiple acts which each could separately constitute the crime of [burglary of a vehicle.] In order for the defendant to be found guilty of [burglary of a vehicle], you must unanimously agree upon the same underlying act." P.I.K. Crim. 4th 68.100 (2020 Supp.).

As discussed above, we generally apply a three-part test—reviewability, whether the instruction was legally and factually appropriate, and reversibility—when reviewing jury instruction errors. See *Bentley*, 317 Kan. at 242. Even so, when a defendant is making a claim that his or her right to a unanimous verdict was violated, a different three-part test applies. *Garcia-Martinez*, 318 Kan. at 693-94. First, we determine whether this is a multiple acts case, with the threshold question being "'whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary.'" *Garcia-Martinez*, 318 Kan. at 694 (quoting *State v. Harris*, 310

17

Kan. 1026, 1039, 453 P.3d 1172 [2019]). This is a question over which we exercise unlimited review. *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). If we find the case does not involve multiple acts, our analysis ends. See *Garcia-Martinez*, 318 Kan. at 694.

If we decide that multiple acts were involved, the second step involves deciding whether error was committed either because the district court failed to instruct the jury to agree on the specific act for each charge or because the State failed to inform the jury which act to rely on in its deliberations. Finally, if error is found, we evaluate such error for harmlessness. 318 Kan. at 694.

Here, Wabaunsee concedes that she failed to request or object to the failure to give a unanimity instruction. Regardless, she argues that the State presented multiple acts that the jury could have relied on to convict her of burglary of a vehicle. She claims the first act relied on by the State is when she popped the hood of the vehicle with the intent to take the battery. And she also claims that the State relied on a second act through an accomplice theory of liability that she was criminally responsible for a distinct and separate act when Garza entered the vehicle with the intent to take the radio and the other items.

Our Supreme Court has held that "'acts are multiple acts if they are factually separate and distinct.'" *State v. Moyer*, 306 Kan. 342, 360, 410 P.3d 71 (2017). The *Moyer* court explained that incidents are factually separate when either independent criminal acts have occurred at different times or when a fresh impulse motivated a later criminal act. 306 Kan. at 360. Four factors guide our analysis to determine whether conduct was unitary or factually separate and distinct: (1) whether the acts occurred at or near the same time; (2) whether they occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated any portion of the acts. *Harris*, 310 Kan. at 1039. As noted, when the conduct is unitary,

18

no unanimity instruction is necessary and our analysis ends. *Garcia-Martinez*, 318 Kan. at 694.

Here, the evidence establishes that no unanimity instruction was necessary because Wabaunsee's acts constituted a single, continuous transaction. Considering the first two factors, Wabaunsee acknowledges that the acts occurred simultaneously at the same location. Moving to factor three, there was no evidence of an intervening event that interrupted Wabaunsee's actions. Wabaunsee claims that Garza committed an intervening act when she entered the passenger seat after Wabaunsee popped the hood.

The evidence showed that these two events occurred at nearly the same time. Garza testified that when they got to the car, Wabaunsee popped the hood and she (Garza) "was helping clean out the car." Garza testified that when they got to the car, they "just started to clean it out, like, grabbed stuff out of the vehicle." There is no evidence that Wabaunsee first popped the hood and then Garza got into the vehicle to clear it out. Rather, both women were acting simultaneously with the alleged intent to take something from the vehicle.

Wabaunsee cites *State v. King*, 297 Kan. 955, 305 P.3d 641 (2013), in support of her position that there were multiple acts. In *King*, our Supreme Court reversed King's conviction for criminal damage to property based on a multiple acts issue. 297 Kan. at 984. In that case, King rammed his truck into a vehicle owned by his father. He left the scene but then returned 5 to 10 minutes later and rammed his truck into an El Camino also owned by his father. Although the acts occurred at roughly the same time and place, the court found that King was motivated by a fresh impulse after he left the scene and returned 5 to 10 minutes later to commit the second act. 297 Kan. at 982.

In the present case, we find that Wabaunsee has failed to persuasively argue that her acts were motivated by a fresh impulse as in *King*. Rather, based on our review of the

19

evidence in the record, both Wabaunsee and Garza were acting simultaneously at the same location and both with the intent to take something from the vehicle. As a result, there was no fresh impulse.

Wabaunsee also cites *State v. Allen*, 290 Kan. 540, 232 P.3d 861 (2010), and argues that our Supreme Court does not always adhere to the four-factor test. In that case, the Kansas Supreme Court noted that analysis of a "fresh impulse" made little sense in a case of possession of a controlled substance where it was unclear whether the State relied on the cocaine found on the defendant's person or the cocaine found in a room of her house. 290 Kan. at 544. Unlike this case, the State further confused the issues by arguing both acts in closing arguments rather than electing one act. Consequently, our Supreme Court found a unanimity problem because it was unclear which cocaine the jury relied on in reaching its verdict. 290 Kan. at 545.

Wabaunsee does not argue—and we do not find—the facts in the present case to be similar to *Allen*. Here, the acts in question constituted a continuous incident with two women simultaneously attempting to or taking items from the vehicle. Furthermore, as we will discuss below, the State did elect one act in closing argument. So we conclude that *Allen* is distinguishable from this case.

A unanimity instruction is not required when the evidence shows a continuous incident that does not have factually separate acts. In *Garcia-Martinez*, a case also involving two actors, the defendant argued that the charge of aggravated kidnapping was supported by four separate acts involving both principal acts and acts of another under a theory of aiding and abetting: (1) the defendant aided and abetted another in confining the victim when the other person struck the victim with a crowbar for attempting to leave the residence; (2) the defendant confined the victim by kicking and beating him after he attempted to leave; (3) the defendant confined the victim in the bathroom by beating him

20

with a hammer and placing bags over his head; and (4) the defendant took and/or confined the victim by placing him in the trunk of the car. 318 Kan. at 694-95.

Applying the multiple-acts factors to these four acts asserted by the defendant in *Garcia-Martinez*, the Kansas Supreme Court found that the acts occurred "during a short window of time" and without "any intervening event separating one act from another or a fresh impulse motiving any of [defendant's] conduct." 318 Kan. at 695-96. As such, our Supreme Court concluded the actions "involved a single course of conduct, not separated by distinct time periods, locations, or causal relationships." 318 Kan. at 696. Because Wabaunsee has not shown that there were multiple acts in this case, we conclude that a unanimity instruction was not necessary.

In addition, as the State points out, it made an election during closing argument by specifically referencing the popping of the hood and removal of the battery as the criminal act. When referencing the elements of the burglary charge, the prosecutor stated it had to prove Wabaunsee entered the vehicle—and she did so by popping the hood—without authority and with the intent to get the battery out. The prosecutor expressly stated that Wabaunsee "entered that car . . . intending to take the battery out, and she admitted that to Detective Julian."

The record reflects that the State made no argument that the jury could find Wabaunsee guilty based on Garza's act of entering the vehicle with the intent to take the items inside the vehicle. Rather, the rebuttal appears to be focused on the credibility of both Wabaunsee and Garza, who testified that it was all based on a misunderstanding. During closing argument, defense counsel asserted that Wabaunsee believed that she had the authority to pop the hood and remove the battery, and she did not know what Garza was doing inside the vehicle.

21

In responding to the theory of defense argued by Wabaunsee's counsel, the State argued in rebuttal:

"There are two people involved in this case. It's not one versus another, they were both there together. Both women—both women were at the Dodge Stratus, both [Wabaunsee] and [Garza] were at the Dodge Stratus, and neither of them could provide clear information about who sent them there. [Garza] testified that she was charged in this case, or related—she was charged with crimes related to this case, she was applied and granted a diversion as long as she met a few initial requirements—completed a few requirements. Additionally, she testified that she signed a diversion agreement which said that everything that was reported in this case was true. That included her participation in the events of June 2, 2021, but those also included—those also included the events as it related to. [*sic*] [Wabaunsee] [d]rove her truck to the Dodge Stratus. [Wabaunsee] was the only one who spoke to Mary and Jesse when they arrived at the Dodge. [Wabaunsee] was the one who drove her truck away from the Dodge Stratus before deputies could arrive, and [Wabaunsee] was still driving that truck when deputies pulled her over a few hours later. [Wabaunsee] was the one who asked about the Dodge [when] [D]eputy Gragg walked up to the window, [Wabaunsee], throughout this whole thing, [Wabaunsee] wasn't alone. [Garza] admitted that she was a participant too, but [Wabaunsee] was also a participant. I ask that despite the fact that there were two people involved, [Wabaunsee] is still culpable, [Wabaunsee] is still a person who has responsibility for the actions that she had that day. So I ask that you find this Wabaunsee guilty."

Viewing the closing argument as a whole, there is no indication that the State was departing from its previous election that it was relying on Wabaunsee popping the hood with the intent to remove the battery for the charge of burglary of a vehicle. At no time did the State indicate that the jury could find Wabaunsee guilty based on Garza's actions. Rather, the State's rebuttal was focused on defense counsel's argument that Wabaunsee believed she was helping Lacey and was innocent as to Garza's actions inside the vehicle. The State elected one act to rely on for this charge—popping the hood with the intent to remove the battery—so a jury instruction on unanimity was unnecessary.

22

Accordingly, because we find that Wabaunsee did not commit multiple acts, a unanimity instruction was not necessary. Further even if Wabaunsee's actions and Garza's actions are viewed as multiple acts, the State elected Wabaunsee's actions as those it was relying on for the charge of burglary to a vehicle. As a result, the district court did not err in failing to give a unanimity instruction.

Finally, even if the district court had erred in failing to give a unanimity instruction, any such error did not amount to reversible error. We note that Wabaunsee argues that we should apply a constitutional harmless error test—which requires a party benefitting from an error to prove beyond a reasonable doubt that the error did not affect the outcome of the trial—based on the United States Supreme Court's holding in *Ramos* that the constitutional right to a unanimous jury verdict applies to the states through the Fourteenth Amendment. 590 U.S. at 93. However, our Supreme Court continues to recognize the clear error test for harmlessness in multiple acts cases. See *State v. Reynolds*, 319 Kan. 1, 14, 18, 552 P.3d 1 (2024) (recognizing that in a multiple acts case, the test for harmlessness when a unanimity instruction was not requested or its absence was not objected to is clear error). Because our Supreme Court shows no indication that it is adopting a constitutional error harmlessness test in light of *Ramos*, we continue to apply the clear error standard of review as set forth in K.S.A. 22-3414(3). We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

As previously established, in reviewing for clear error, we consider whether we are firmly convinced the jury would have reached a different verdict if the district court gave a jury instruction on unanimity. Wabaunsee presented a unified defense by presenting a general denial of any wrongdoing and arguing that the incident was a misunderstanding. See *State v. De La Torre*, 300 Kan. 591, 599, 331 P.3d 815 (2014) (a

23

failure to instruct the jury regarding unanimity in a multiple acts case is not generally reversible when the defendant presents a unified defense).

At trial, the jury had to decide whether it believed that Wabaunsee thought she had permission from Lacey to enter the car and remove the battery or whether Wabaunsee popped the hood with the intent to take the battery. The jury rejected Wabaunsee's general defense that Wabaunsee believed she and Garza had permission to enter the vehicle. Thus, even if a unanimity instruction should have been given, we find no clear error based on the jury's rejection of Wabaunsee's unified defense.

*Prosecutorial Error*

Next, Wabaunsee challenges her convictions for burglary of a vehicle, criminal damage to property, and theft based on her claim that she was deprived of a fair trial by the prosecutor's closing argument. Wabaunsee claims that during closing argument, the prosecutor misstated the evidence by claiming that Wabaunsee "'admitted' to Detective Julian that she intended to take items from the Dodge." Wabaunsee claims this was a misstatement of the evidence because Wabaunsee claimed she was at the Dodge to help her friend change the battery, and she never admitted an intent to take anything. In addition, she claims the State cannot claim "beyond a reasonable doubt" that the misstatement did not affect the outcome of the trial because Wabaunsee's mens rea was "one of the most important issues at trial."

Wabaunsee did not object at trial to the prosecutor's comments. We are to review a prosecutorial error claim based on a prosecutor's comments made during voir dire, opening statement, or closing argument even without a timely objection, but the court may figure the presence or absence of an objection into its analysis of the alleged error. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021).

24

We use a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

See *State v. Fraire*, 312 Kan. 786, 791-92, 481 P.3d 129 (2021).

Prosecutors have wide latitude to discuss the evidence and the law. *Sherman*, 305 Kan. at 109. Even so, a prosecutor commits error when arguing a fact or factual inference without an evidentiary foundation. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021); *State v. Moore*, 311 Kan. 1019, 1040, 469 P.3d 648 (2020). Appellate courts find prosecutorial error when a prosecutor's acts fall outside the "wide latitude afforded [to] prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *Sherman*, 305 Kan. at 109.

If we find error, we then determine whether the error prejudiced the defendant's due process rights to a fair trial. *State v. Gallegos*, 313 Kan. 262, 273, 485 P.3d 622 (2021). In doing so, we apply the constitutional harmless error inquiry set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this

25

test, the State must prove beyond a reasonable doubt that the error did not affect the outcome of the trial. *Gallegos*, 313 Kan. at 273.

After an accurate recitation of the facts in closing argument, the prosecutor argued: "What both [Wabaunsee] and [Garza] admitted was that they were both at the Dodge Stratus on June 2, 2021, they both went to the car, they both got inside that car, and they were both intending to take stuff from that car." Wabaunsee argues that this was a misstatement of fact because although she admitted to being at the vehicle to change a battery for a friend, she never admitted she intended to take anything.

The State contends the prosecutor did not misstate the facts because Wabaunsee claimed that she went to the vehicle to switch out the battery. When she arrived at the vehicle, she popped the hood and began removing the battery when she was interrupted by the Priests. The State claims that even though Wabaunsee asserts her intention was to switch out the battery, it was necessary for her to take the battery from the vehicle to make the switch.

The issue before the jury was whether Wabaunsee believed that she had permission to take the battery, not whether she merely intended to take the battery from the vehicle. So, it appears that the words used by the prosecutor regarding the women "both intending to take stuff from that car" was a misstatement and could have been more clearly stated. Still, based on our review of the record on appeal, we find that the misstatement was isolated, it was not repeated, and there is nothing to indicate that it was done intentionally.

Accordingly, we turn to the case question of whether the misstatement by the prosecutor was harmless. In doing so, we recognize that there are "[m]ultiple and varied individualized factors" in performing this analysis. *Sherman*, 305 Kan. at 110. Every instance of prosecutorial error is fact specific, and we must consider all indicators of

26

prejudice to determine whether the State has met its burden to show no reasonable probability that the error contributed to the verdict. The focus is on the effect of the error on the verdict. 305 Kan. at 111.

Here, we view the isolated misstatement by the prosecutor in the light of the entire record. In viewing the record as a whole, it was evident that the jury's decision was whether to believe Wabaunsee that she had permission to pop the hood and take out the battery or whether she intended to commit a crime. In addition, the district court properly instructed the jury: "Statements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law, but they are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." Absent a showing to the contrary, we presume that the jury followed the instructions given by the district court. *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023).

Because Wabaunsee's theory of defense—that she had permission to take the battery from the vehicle—was made very clear at trial, we find that the jury understood its role in determining whether she had the requisite criminal intent. We find no likelihood that this isolated comment from the prosecutor caused the jury to presume that the element of intent had been met in this case. Instead, based on our review of the record on appeal, we find that the jury understood that it must determine whether it believed Wabaunsee's theory of defense.

The record confirms that the recitation of events provided by Wabaunsee and Garza was not corroborated by any other witnesses or additional evidence. The record also reflects that the inconsistencies in the defense—such as each woman's claim that she did not personally know or speak to Lacey—led to its weakness. It is apparent that the jury understood that it must determine whether Wabaunsee was at the vehicle with the intent to merely help a friend or with the criminal intent to take items from the vehicle without authority.

27

Given the totality of the evidence admitted at trial, we find that the misstatement did not affect the outcome of the trial in light of the entire record, and there is no reasonable possibility that the misstatement contributed to the verdict.

*Constructive Amendment of Theft Charge*

Finally, Wabaunsee contends for the first time on appeal that the district court violated her constitutional rights by allowing the State to constructively amend the offense of theft when the jury instruction broadened the basis of the charge. The State responds that we need not address the issue for the first time on appeal because it is unpreserved. In the alternative, the State contends that the district court's jury instruction did not amount to an unconstitutional constructive amendment.

The State charged Wabaunsee with misdemeanor theft by alleging that she unlawfully obtained or exerted unauthorized control over a "vehicle owner's manual and/or vehicle insurance and/or vehicle registration" with the intent to permanently deprive the owner of its possession, use, or benefit. But at trial, the district court instructed the jury that it could convict Wabaunsee of theft without specifying the property over which she allegedly exercised control.

Wabaunsee concedes that she did not raise this issue to the district court. Generally, we do not consider issues raised for the first time on appeal, even those involving constitutional rights. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). But there are exceptions to the general rule, and Wabaunsee has complied with Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) by asserting that two of those exceptions apply:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; or (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021).

28

Our decision regarding whether to review an unpreserved claim under these exceptions is a prudential one, and we are not required to do so. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). Still, we acknowledge that an impermissible constructive amendment may—depending on the circumstances—result in a denial of fundamental constitutional rights to notice and due process. See *State v. Dickerson*, No. 125,529, 2024 WL 62834, at *2 (Kan. App. 2024) (unpublished opinion). We also note that other panels of our court have addressed this issue for the first time on appeal. See *State v. Hunt*, 61 Kan. App. 2d 435, 438, 503 P.3d 1067 (2021); *State v. Franklin*, No. 125,324, 2024 WL 3308183, at *2 (Kan. App. 2024) (unpublished opinion). So we will address this contention on the merits.

Here, Wabaunsee claims that the State impermissibly constructively amended and broadened its complaint when the complaint listed specific property but the jury instruction for theft did not specify specific property. Whether a constructive amendment occurred is subject to unlimited review. *Hunt*, 61 Kan. App. 2d at 438-39. See *United States v. Farr*, 536 F.3d 1174, 1179 (10th Cir. 2008). The language used by the State in a charging document becomes an essential element of the charge itself. As such, the jury instructions and evidence at trial must comport with the complaint to serve fundamental fairness and due process. *Farr*, 536 F.3d at 1181.

The State impermissibly and constructively amends a complaint when the jury instructions and evidence at trial alter the complaint to charge a different crime. *Hunt*, 61 Kan. App. 2d at 438. See *United States v. Koerber*, 10 F.4th 1083, 1115-16 (10th Cir. 2021), *cert. denied* 143 S. Ct. 326 (2022). An impermissible constructive amendment concerns whether the defendant had notice of the crime on which the jury was instructed if arguably different from the crime charged in the complaint. See *State v. Holmes*, No. 116,338, 2017 WL 5617102, at *4 (Kan. App. 2017) (unpublished opinion).

As a panel of this court found in *Dickerson*, 2024 WL 62834, at *2:

29

"Differences in the charged conduct and the evidence proven at trial present variances which may warrant reversal. A variance may occur in two different ways: (1) where the charging terms do not change, but the evidence at trial proves facts materially different from the facts alleged in the complaint; and (2) where the evidence presented at trial, coupled with the jury instructions, so alters the complaint as to charge a different crime. See *United States v. Koerber*, 10 F.4th 1083, 1115-16 (10th Cir. 2021), *cert. denied* 143 S. Ct. 326 (2022). The first scenario presents a simple variance which triggers harmless error review; the latter presents an impermissible constructive amendment which is reversible pe se."

To determine whether a constructive amendment has occurred, we compare the charging document "with the district court proceedings to discern if those proceedings broadened the possible bases for conviction beyond those found in the operative charging document." *Farr*, 536 F.3d at 1180.

In this case, the State charged Wabaunsee with theft as follows:

"On or about the 2nd of June, 2021 in the State of Kansas and County of Shawnee, LINDSEY L WABAUNSEE, did, then and there, unlawfully obtain or exert unauthorized control over property or services, to-wit: vehicle owner's manual and/or vehicle insurance and/or vehicle registration, with the intent to permanently deprive the owner, to-wit: Mary Lou Priest, of the possession, use or benefit of said property, having a value of less than $1,500, contrary to the form of the statutes in such case made and provided and against the peace and dignity of the State of Kansas."

The jury instruction set forth the charge as follows:

"The defendant is charged in Count 3 with theft. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
"1. Mary Lou Priest was the owner of the property.
"2. The defendant obtained unauthorized control over the property.
"3. The defendant intended to deprive Mary Lou Priest permanently of the use or benefit of the property. The value of the property was less than $1,500.

30

"4. This act occurred on or about the 2nd day of June, 2021, in Shawnee County, Kansas."

The variance in this case is that the charging document listed the specific items taken, while the jury instruction simply referred to property with a value less than $1,500.

Wabaunsee cites *Dickerson* in support of her position that the State constructively amended the complaint. In that case, the complaint charged the defendant with interference with law enforcement by alleging that Dickerson obstructed a police officer in the discharge of official duty in "detention while awaiting confirmation of a warrant." 2024 WL 62834, at *1. However, at trial, the district court broadly instructed the jury that it could find Dickerson guilty if the law enforcement officer "was discharging an official duty" and Dickerson obstructed the law enforcement officer "in discharge of that official duty." 2024 WL 62834, at *2. But the jury instructions did not define that official duty as "detention while awaiting confirmation of a warrant" in accordance with the charging document. 2024 WL 62834, at *1. The panel then examined the jury instructions, evidence, and arguments at trial and found that they were broader than the specific type of interference charged in the complaint. 2024 WL 62834, at *4-5.

In *Dickerson*, the panel specifically examined several cases in which a variance required reversal and then examined cases where reversal was not required. After reviewing those cases, the panel concluded "that to constitute a constructive amendment [requiring reversal], the incongruity must concern essential elements of the [crime]." 2024 WL 62834, at *4. In that case, the panel found that a "mere variance between the complaint and evidence at trial transformed into a fatal incongruity when the district court instructed the jury on broader terms than the charges and the State argued to the jury that Dickerson interfered with the official duty to execute and serve the arrest warrant." 2024 WL 62834, at *5.

31

In contrast, the variance in this case did not concern essential elements of the crime. Wabaunsee points to the fact that in addition to the vehicle owner's manual, vehicle insurance, and vehicle registration that was taken from the vehicle, the State also mentioned "ratchet straps" were taken from the vehicle. Although this is a variance, it does not change an essential element of the crime or Wabaunsee's approach to defending herself. The State must prove that Wabaunsee obtained unauthorized control over the property and intended to deprive Priest permanently of the use or benefit of the property.

Wabaunsee's defense focused on whether she believed she had the authority to enter the vehicle and not what type of property was taken. Based on her reliance on this defense, the property taken was not the issue before the jury. The jury had to find that Wabaunsee obtained unauthorized control over property with a value less than $1,500 with the intent to permanently deprive Priest of the use or benefit of the property. Wabaunsee and Garza admitted to being at Priest's vehicle, and Garza admitted to taking the items inside the vehicle. Wabaunsee's defense was that it was a misunderstanding because she thought the vehicle belonged to Lacey, and there was no dispute about the property taken.

Under these circumstances, Wabaunsee had adequate notice of the charge against her and cannot show any prejudice caused by the variance in the jury instruction. While the jury instruction on theft may have broadened the type of property beyond just the vehicle owner's manual, vehicle insurance, and vehicle registration, its elements matched the language of the theft charge in the complaint. As a result, Wabaunsee has shown a mere variance and not a constructive amendment requiring reversal.

Affirmed.